BEE PUBLISHING COMPANY v. WORLD PUBLISHING COMPANY.

FILED MARCH 7, 1900.  No. 9,105.

1. **Newspaper Article: LIBEL PER SE.** A newspaper article in which it is falsely stated that a business corporation is maintaining a precarious existence, that it is not able to meet its financial obligations and is tottering, bankrupt and about to pass out of existence, is libelous *per se.*

2. **Measure of Damages.** In this state the measure of recovery in all civil actions is compensation for the injury sustained.

3. **Evidence: EXPRESS MALICE.** In the trial of an action for libel it is improper to receive evidence of express malice for the purpose of influencing the jury in determining the amount which plaintiff ought to recover.

4. **Plea of Justification: EVIDENCE TO DISPROVE.** But if, in such action, a plea of justification has been interposed, evidence of express malice may be received for the purpose of disproving the claim of defendant that in the publication of the article he acted in good faith, from proper motives and for justifiable ends.

5. ———: **EVIDENTIAL FACTS: AMENDMENT.** A plea justifying a libel is defective if the evidential facts, instead of the ultimate facts, are alleged; but, if the trial court and the litigants treat the plea as sufficient, and proof is introduced on the theory that it is sufficient, its infirmity may be cured by amendment.

6. **Damages: PROVINCE OF JURY.** The law presumes that some damage results from the publication of an article libelous *per se*, and it is the business of the jury, in an action for such injury, to determine the amount of damage.

7. **Evidence: GIST OF ACTION: VOLUME OF BUSINESS.** In the trial of an action for damages resulting from the publication of a newspaper libel, where the gist of the action is injury done to plaintiff's business, it is proper to show the extent and character of the business and its volume both before and after the publication of the libelous article.

8. ———: ———: **PROBABLE FUTURE DAMAGES.** In such case, the jury should take into account the probable future as well as the actual past, and assess the damages once for all.

9. ———: ———: **GENERAL DECLINE.** In an action for libel, under the allegation of loss of business, it is competent for the plaintiff to prove a general loss or decline of patronage without naming particular customers or proving that they have ceased to do business with him.

10. ———: ———: **SPECIAL DAMAGE.** And, in such case, if evidence of special damages is received without objection, it may be considered by the jury.

11. **Defamatory Article: IMPUTATION UPON SOLVENCY.** Where a defamatory article contains an imputation upon the solvency and stability of a large newspaper concern, it is proper, in the trial of an action to recover damages occasioned by the libel, to show by expert proof the general effect of such an article on the business of such a publisher.

12. Disputed Questions of Fact: BEST EVIDENCE.   In all judicial pro-
ceedings, disputed questions of fact must be established by the
best evidence attainable.

13. ——: SECONDARY EVIDENCE.   Evidence can not be received
which, on its face, indicates that it is secondary and that the
original source of information is in existence and accessible.

14. Incompetent Evidence: CUMULATIVE EVIDENCE NOT REVERSIBLE
ERROR.   The admission of incompetent evidence is not reversi-
ble error, if the fact which it tends to prove is otherwise con-
clusively established.

15. Excessive Damages: ACTION EX DELICTO.   Where it appears that
a judgment is based on a verdict which is excessive, though
not given under the influence of passion or prejudice, it may
be permitted to stand, even in actions *ex delicto*, on condition
that the excess be remitted.

16. ——: ——: REMITTITUR.   Damages *held* to be excessive and
plaintiff allowed to file a remittitur.

ERROR to the district court of Douglas county.   Tried
below before SCOTT, J.   *Affirmed upon filing remittitur.*

*E. W. Simeral* and *Eleazer Wakeley,* for plaintiff in error,
argued that the proposition that punitive or exemplary
damages could not be recovered in this state for libel or
slander was not disputed; and this rule needed no discus-
sion, except to show that it was violated in spirit and
effect by repeated rulings, complained of herein as preju-
dicial errors; that the plaintiff, being a corporation, could
recover no damages except for actual loss of business, and
profits directly traceable to the publication of the article;
that whether an individual or a firm could recover be-
yond that amount, for an article libelous only as assail-
ing his or its business standing and credit need
not be here discussed; but it would be easy to
show that, even in such case, no other damages
were recoverable.   A corporation could not be wounded
in feelings and sensibilities of which it is inherently
destitute.   The trite adage that "a corporation has
no soul" was strictly pertinent in a question of damages
to business and credit.   Damages to the feelings or sensi-
bilities of a natural person were no doubt actual damages

which, in a proper case, might be recovered as such. They were not punitive. But physical, mental or psychological damages to a corporation were not conceivable. When no special damages were alleged in the petition none could be properly proved, or relied upon, in any case, except such as would necesarily and ordinarily flow from and be caused by the article in question. The court must be able to say, from the words of the article, and the nature of the plaintiff's business, as set forth in the petition, that the ordinary and usual result of the publication must be to cause damage to such business. But there were authorities that, in case of a corporation, special damages must always be alleged in order to permit proof thereof.

On the subject of malice plaintiff's counsel cited: *Republican Publishing Co. v. Conroy,* 38 Pac. Rep. [Colo.], 423; *Mattice v. Wilcox,* 42 N. E. Rep. [N. Y.], 270; *Casey v. Hulgan,* 21 N. E. Rep. [Ind.], 322; *Klewin v. B. uman,* 10 N. W. Rep. [Wis.], 398; *Templeton v. Graves,* 59 Wis., 95, 17 N. W. Rep., 672; *Delaney v. Kaetel,* 51 N. W. Rep., [Wis.], 559; *Rosewater v. Hoffman,* 24 Nebr., 222; *Boyer v. Barr,* 8 Nebr., 70; *Roose v. Perkins,* 9 Nebr., 315; *Riewe v. McCormick,* 11 Nebr., 263; *Boldt v. Budwig,* 19 Nebr., 739; *Detroit Daily Post Co. v. McArthur,* 16 Mich., 447; *King v. Root,* 4 Wend. [N. Y.], 114; *Root v. King,* 7 Cowin [N. Y.], 613; *Byrket v. Monohon,* 7 Blackf. [Ind.], 83; *Shilling v. Carson,* 27 Md., 175; *Weaver v. Hendrick,* 30 Mo., 502; *True v. Plumley,* 36 Me., 466; *Jellison v. Goodwin,* 43 Me., 287.

As to measure of damages plaintiff's counsel also cited: 1 Sutherland, Damages, 763; *Terwilliger v. Wands,* 17 N. Y., 54; *Bassil v. Elmore,* 65 Barb. [N. Y.], 627; *Keenholts v. Becker,* 3 Den. [N. Y.], 346; *Dicken v. Shepherd,* 22 Md., 399; *Squier v. Gould,* 14 Wend. [N. Y.], 159; *Shaw v. Hoffman,* 21 Mich., 151.

*Hall & McCulloch,* for defendant in error, cited constitution of Nebraska, art. 1, sec. 5, and argued that the

constitutional defense was evidently the defense set up in this case; and the issues were: First—Was the article true? Second—Was it published for good motives and for justifiable ends? These questions were submitted to the jury. Suppose the jury should have found that the article was true, did not the question of whether or not it was published "with malice" figure in the determination of whether it was published "with good motives and for justifiable ends"? One can not justify himself for libel, if he published it with malice. If it be shown that it was malicious in its publication, a jury could hardly find that it was published "with good motives and for justifiable ends." So that, by the pleadings, the question of malice was directly in issue, and it would have made no difference, if the plaintiff in error had shown the argument true; providing malice was shown to the satisfaction of the jury. Then it would be clear that plaintiff in error had failed upon the other essential allegation of defense, to-wit, that the article "was published with good motives and for justifiable ends."

SULLIVAN, J.

This proceeding in error brings up for review a judgment of the district court of Douglas county in favor of the World Publishing Company and against the Bee Publishing Company. The action was brought to recover damages for an alleged libel published by the defendant concerning the plaintiff, and in relation to its business. Each of the litigants is a corporation engaged in the publication of a newspaper in the city of Omaha. The article complained of was printed in two editions of the *Omaha Daily Bee* and, in substance, asserted that the *World-Herald*, the newspaper published by the defendant, had been maintaining for some time a precarious existence; that it was no longer able to meet its financial obligations; that it was tottering, bankrupt and about to pass out of existence. The story was told with much detail and ornamentation, and was well calculated to

convince the reader that the plaintiff was moribund and about to collapse as a business concern. The defendant, in its answer, admitted the publication of the article as set forth in the petition, and alleged that at the time of such publication it was generally believed that the plaintiff was about to sell, or had sold, its newspaper; that the article in question was published as an article of news, without malice, with good motives and for justifiable ends. It was also alleged that the plaintiff was, in fact, trying to sell its newspaper, and that its assets were less than its liabilities. During the trial the court admitted, over defendant's objections, evidence tending to show that the libelous article was the product of actual malice, and that it was published with a deliberate purpose to impair the plaintiff's credit and destroy its business. These rulings are now assigned for error.

In this state the measure of recovery in all civil actions is compensation for the injury sustained. Exemplary damages are never allowed. See *Boyer v. Barr*, 8 Nebr., 68; *Roose v. Perkins*, 9 Nebr., 304; *Riewe v. Mc-Cormick*, 11 Nebr., 261; *Boldt v. Budwig*, 19 Nebr., 739. The evidence of express malice was, therefore, improper, if received for the purpose of influencing the jury in determining the amount which the plaintiff ought to recover. If the publication was false and not privileged, legal malice was indisputably established, and the plaintiff was entitled to full reparation for the wrong done it, without proving that the defamation was inspired by resentment, malevolence or a desire on the part of the defendant to be rid of an offensive business competitor. But it seems clear to us, from a careful examination of the entire record, that the evidence in question was not given to enhance damages, but to disprove the defendant's claim that in libeling the plaintiff it acted in good faith, and from motives altogether proper and justifiable. The plea of justification was defective, no doubt, in alleging evidence of plaintiff's insolvency instead of setting forth the ultimate facts, but it was treated by the court

and the litigants as a sufficient plea; and it was, we think, such an evident and obvious attempt to justify the libel that it might have been amended and its infirmity cured, without terms, during the trial, or even after verdict. It was within the doctrine of *McCleneghan v. Reid,* 34 Nebr., 472, a denial of malice and a substantial justification of the act of which plaintiff complains. That the Bee Publishing Company relied on the truth of the article and the motives for its publication as a complete defense, is shown by the fact that it produced testimony tending to prove that the plaintiff was insolvent and that the defendant acted in good faith and under a sense of duty to the public. If this evidence was not designed to sustain a plea of justification, it is difficult to conceive for what purpose it was offered. The trial court charged the jury that exemplary or punitive damages were not recoverable, and, in effect, advised them that neither malice nor good faith could be taken into account, or given any weight whatever, in the assessment of damages. So it appears that the evidence of express malice was not only properly received, but was, under the instructions of the court, kept within its legitimate sphere of influence.

Another reason assigned for reversing the judgment is that the damages awarded are excessive. In this connection it is insisted that the defamatory article was not libelous *per se,* and that the loss of advertising patronage, not having been specially pleaded, was not recoverable under a general allegation of damages. The article was libelous *per se;* it contained a distinct imputation on the plaintiff's solvency; its natural and inevitable tendency was to produce injury. The law presumes that some damage did result from the publication, and it was the business of the jury to determine the amount. See 1 Jaggard, Torts, 493; *Republican Publishing Co. v. Miner,* 12 Colo., 77; *Hubbard v. Rutledge,* 52 Miss., 7; *Boogher v. Knapp,* 76 Mo., 457; *Mitchell v. Bradstreet Co.,* 116 Mo., 226; *Lock v. Bradstreet Co.,* 22 Fed. Rep., 771; *Newell v.*

*How*, 31 Minn., 235. In Odgers, Libel & Slander, 293, it is said: "Even if no evidence be offered by the plaintiff as to damages, the jury are in no way bound to give nominal damages only; they may read the libel and give such substantial damages as will compensate the plaintiff for such defamation." See *Lick v. Owen*, 47 Cal., 252; *Tripp v. Thomas*, 3 Barn. & Cres., 427*. In this case there was evidence showing that plaintiff was conducting a very extensive business, requiring an annual outlay of about $180,000; that the *Omaha Bee* had a wide circulation in this and other states, and reached a great many of plaintiff's advertising customers; that in the year following the publication of the libel there was a considerable falling off in plaintiff's advertising patronage. There was also testimony of a general character tending to show the mischievous effect of a charge of insolvency upon the advertising business of a newspaper. This evidence was competent and material. It was proper to be considered by the jury in determining what sum would afford just reparation to the plaintiff for the injury resulting from the defendant's wrongful act. In assessing the damages the jury were authorized to take into account the probable future as well as the actual past; they were required to assess the damages once for all. See Odgers, Libel & Slander, 292; *True v. Plumley*, 36 Me., 466. Under the general allegation of loss of business, it was competent for the plaintiff to prove a general loss or decline of patronage without naming particular customers, or proving that they had ceased to advertise with it. See Odgers, Libel & Slander, 319; *Weiss v. Whittemore*, 28 Mich., 366; *Mitchell v. Bradstreet Co.*, 116 Mo., 226; *Evans v. Harries*, 38 Eng. Law & Eq., 347; *Trenton Mutual Ins. Co. v. Perrine*, 3 Zab. [N. J.], 402; *Broad v. Deuster*, 8 Biss. [U. S.], 265; Newell, Slander & Libel, 868. But even if it were necessary to plead specially the items of loss occasioned by the libel, the jury were justified in considering the evidence introduced by the plaintiff, because no attempt was made to exclude it on the

ground that the allegation of damage was general. See *Bergmann v. Jones*, 94 N. Y., 51. Everything considered we can not say that the damages awarded by the jury are so large as to indicate that the verdict is the result of passion or prejudice, and yet they exceed, we think, the actual loss suffered by the plaintiff in its business. One who deliberately libels another can not justly insist that every pecuniary loss caused by the defamation shall be pointed out with precision. There is no unerring stand-ard for the measurement of damages in this class of cases. Much latitude must of necessity, be given to the practical wisdom and sound discretion of the jury. They should be put in possession of the material facts, and directed to make their award, bearing in mind that the relation of cause and effect must always exist between the con-duct complained of and the loss for which damages are given.

We will now consider some objections to evidence in-troduced by the plaintiff to prove the extent of the injury inflicted upon it. Cadet Taylor and Gilbert M. Hitchcock were called as witnesses and testified in a general way to the conditions upon which the successful prosecution of a business like that of the plaintiff depends. The tend-ency of the evidence was to show the importance and value to a newspaper of a reputation for stability and permanence, and the disastrous consequence of the want of such a reputation. We are of the opinion that the evidence was competent and its reception proper. The business of a great newspaper is something with which the average juror is not familiar. The considerations which influence advertisers to give or withhold patron-age are not known to him; and it is, therefore, permissi-ble for persons of special experience to testify to what extent the success of a publisher in getting and retain-ing business depends upon his good repute. The defend-ant has referred us to no decision holding evidence of this character inadmissible, and we have found none in the course of a somewhat extended investigation of the

50

cases dealing with the subject of expert proof. It is true that both Hitchcock and Taylor testified to some facts which are trite and known of all men, but this was in no respect prejudicial to the defendant; it could not have been injured by the affirmation of facts of universal recognition.

A further contention of defendant is that the court erred in permitting Mr. Hitchcock to testify to the falling off in plaintiff's advertising business during the year following the publication of the libel. It is asserted that this evidence was incompetent, because it was merely the conclusion of the witness based on an examination of the books of the World Publishing Company. It is elementary, of course, that in all judicial proceedings disputed questions of fact must be established by the best means attainable, and that evidence can not be received which indicates on its face that it is secondary and that the original source of information is in existence and accessible. Tested by this rule, it must be conceded that Hitchcock's testimony, to the extent that it was a conclusion from the books of the plaintiff, was inadmissible. It was certainly improper for the witness to state the result gathered by him from an examination of the books themselves, because, even if the entries were numerous and complicated, the production of the books, they being within the jurisdiction of the court and subject to its orders, was a precedent and indispensable condition to the introduction in evidence of a summary or abstract of their contents. Counsel for the defendant was entitled to cross-examine the witness with the books before him, and with the information afforded by them, test the correctness of the conclusions given to the jury. See 1 Greenleaf, Evidence [15th ed.], sec. 82; 1 Jones, Evidence, sec. 200; 1 Rice, Evidence, p. 153; *Boston & W. R. Co. v. Dana*, 1 Gray [Mass.], 83; *Burton v. Driggs*, 20 Wall. [U. S.], 125; *Wolford v. Farnham*, 47 Minn., 95; *Culver v. Marks*, 122 Ind., 554; *Brayton v. Sherman*, 23 N. E. Rep. [N. Y.], 471; *Poor v. Robinson*, 13 Bush [Ky.],

290; *Insurance Co. v. Weide,* 9 Wall. [U. S.], 677; *Anchor
Mill Co. v. Walsh,* 108 Mo., 277; *Greenville v. Ormand,* 51
S. Car., 58; *Holmes v. Marden,* 12 Pick. [Mass.], 168. But
while it is clear the rulings here complained of were er-
roneous, they were not, we think, prejudicial to the de-
fendant, and consequently do not afford a sufficient rea-
son for reversing the judgment.   Mr. Hitchcock was
thoroughly familiar with the business of the World Pub-
lishing Company. He knew from day to day the amount
of its receipts and expenditures, and when asked to what
extent the plaintiff's advertising patronage had declined
during the year following the publication of the libel, he
testified from an abstract made up from the advertising
register, not because it was necessary for substantial ac-
curacy of statement to refer to any memorandum, but in
order, it would seem, to be strictly and mathematically
correct.   That the diminution of business to which the
witness testified was approximately known to him, en-
tirely independent of the books, is a conclusion from
which we can not escape.   He testified:  "I know the
volume of business transacted by the company, and I
know it from constant management of the business and
control of it, and also from constant inspection of the
books which record the transactions."   That the testi-
mony was in fact absolutely true, is not questioned; that
actual prejudice resulted from its admission is not
claimed.   The contention of counsel for defendant, as we
understand it, is simply this, that the evidence, being
technically inadmissible, it was reversible error to permit
it to go to the jury.   Our view of the matter is that
the credibility and worth of the evidence does not depend
alone upon the books of account, or the memoranda
used by the witness, but also upon his independent
knowledge of the facts to which he testified.   The assign-
ments of error based upon the reception of evidence
showing the loss of advertising patronage can not be sus-
tained.

The refusal of the court to give certain instructions

requested by the defendant is made the subject of complaint. So far as these requests state correct and pertinent propositions of law, they are embraced in the general charge which is, in most respects, an admirable exposition of the law of libel as applied to the facts of this case.

On the subject of damages the instructions were very explicit. The jury were told that the damages which they were authorized to allow were actual damages, and such only as resulted directly from the libelous article set out in the petition. This statement was sufficient. It could not have been misunderstood. It was all the law required.

For the reason that the damages awarded are in excess of the loss sustained by the plaintiff, the judgment will be reversed unless a remittitur for the sum of $3,000 shall be filed with the clerk of this court within thirty days from this date. If such remittitur be so filed, the judgment for $4,000, with interest on that amount, will be affirmed. It is the settled doctrine of this court, even in actions *ex delicto*, that a judgment based on a verdict which is excessive, but which was not given under the influence of passion or prejudice, will be permitted to stand on condition that the excess be remitted. See *Fremont, E. & M. V. R. Co. v. French*, 48 Nebr., 638; *Fremont, E. & M. V. R. Co. v. Leslie*, 41 Nebr., 159.

JUDGMENT ACCORDINGLY.