THOMAS DENNISON, APPELLEE, v. DAILY NEWS PUBLISHING COMPANY, APPELLANT.

FILED NOVEMBER 19, 1908.   No. 15,262.

1. Libel: EVIDENCE. In a civil action to recover damages for libel it is proper to produce evidence showing the relations existing between the plaintiff and the author of the alleged libel, for the purpose of proving that the plaintiff was the person referred to, when his name does not appear in the article, and defendant does not admit that he is the one referred to.

2. ———: ELEMENTS OF DAMAGE. Neither the grief experienced by the plaintiff's wife upon reading an alleged libelous article regarding plaintiff nor the influence of her grief upon the plaintiff's mind are elements of damage recoverable in action for libel.

3. ———: DAMAGES: EVIDENCE. In a civil action for libel in this state, wherein punitive damages are not recoverable, neither evidence of defendant's refusal to publish a retraction, nor evidence that others who had also published the alleged libel had published a retraction, is admissible for the purpose of enhancing the plaintiff's recovery.

4. ———: EVIDENCE. In such case the editor of defendant's paper, in which the alleged libel was published, should not be required upon objection to testify as to whom he "considered" and "supposed" the article referred.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed.*

*J. H. Van Dusen* and *Irving F. Baxter,* for appellant.

*W. J. Connell, contra.*

EPPERSON, C.

On the night of November 22, 1904, in the city of Omaha, the home of Elmer E. Thomas, attorney for the civic federation, while it was occupied by himself and his family, was partially wrecked by the explosion of a dynamite bomb, brought about by some person unknown, with the probable intention of murdering said Thomas. On November 26, 1904, the defendant herein published in the

Omaha Daily News an address delivered by Mr. Thomas at a mass meeting of citizens of Omaha, which, with unimportant matters omitted, is as follows: "When I began this fight as attorney for the civic federation, I saw at the outset a man who stood across the path of good government in this city. It was necessary that this man be driven out of the city. It is because of the fight made on that man that my family has been placed in jeopardy of their lives. When Richard L. Metcalf, editor of the World-Herald, opposed the selection of a certain chief of police, this man hired a slugger to dog his footsteps. Whenever Mr. Metcalf and his family went out at night this thug followed him for the purpose of intimidating his wife and family. A few years ago Walter Moise, a saloon-keeper, offended this same man, and a convict, Al Green, now in the Missouri penitentiary, says this person offered him $5,000 to kill Moise. County Attorney Shields offended this same individual, and a convict in the Iowa penitentiary says he offered $3,000 to dynamite Shield's house. It is important that the unholy alliance between the officials and this man be broken up. The police can scour the cornfields, run down the long and short man, or the glass-eyed man, search the cellars of respected citizens, but when we say, 'Here is the man who knows who did it,' we can get nothing done. Who threw the bomb? This man either threw that bomb, hired some one to throw it, or knows who did it. He has educated and sent out more thieves than any other man in the country. He has the reputation among great detective agencies of being one of the greatest criminals in the United States, and yet he is harbored here." This action was instituted by the plaintiff, who alleged that he is the individual referred to in the speech of Elmer E. Thomas, published as aforesaid, that said publication is libelous, and sought to recover general damages in the sum of $50,000. A judgment of seven thousand five hundred dollars was obtained in the court below, and defendant has appealed.

1. Upon trial the plaintiff was permitted over objec-

tion to testify that Elmer E. Thomas, who uttered the words reproduced in the alleged libelous article, had appeared as an attorney against the plaintiff in certain prosecutions pending against the latter in Iowa, and also in proceedings in this state for the extradition of plaintiff. Such actions were pending at the time the Thomas speech was made and published. We find no error in the admission of this testimony. Evidence showing the relations existing between the plaintiff and the author of the alleged libelous utterance is proper for the purpose of showing that the article referred to the plaintiff, when his name is not mentioned therein, and the pleadings do not admit that he is the party referred to. Some of the testimony in this regard, however, was otherwise incompetent. For instance, plaintiff testified: "He (meaning Thomas) had been over in Harrison county, Iowa, and had the assistance of a man out of the penitentiary; * * * had me indicted over there on two charges." These are but the conclusions of the witness, and probably would have been stricken from the record had defendant requested it.

2. The plaintiff testified that he had first read the libelous article while absent from his home. Over objections he was further permitted to testify as follows: "Where again do you say you saw it? A. At home. Q. Under what conditions as affecting your mental condition or causing you pain or anguish of mind? A. My wife had it, and was reading it and was crying." Defendant moved to strike out the last answer of the witness as incompetent, irrevelant and immaterial. The motion was overruled. "Q. And did that condition affect you as far as the pain and anguish of mind is concerned? A. That worried me all of the time. The worry was so I could not eat or sleep as I used to." A motion to strike out this last quoted answer was also overruled. It is not contended by the plaintiff that he is entitled to recover for the suffering endured by his wife, but it is urged that the testimony is admissible to show that his suffering was

greater because of the grief which the publication caused her. In actions for libel or slander plaintiff is entitled to prove that he has a family, and of whom it consists. Such evidence bears directly upon the question of damage. *Cahill v. Murphy,* 94 Cal. 29, 28 Am. St. Rep. 88; *Enos v. Enos,* 135 N. Y. 609; *Klumph v. Dunn,* 66 Pa. St. 141. *Enquirer Co. v. Johnston,* 72 Fed. 443. It shows, in part, his position in society. Such evidence is admissible for the purpose of proving that the plaintiff has a family, whose disgrace, shame, or humiliation by reason of the libel increases his mental suffering. In *Cahill v. Murphy, supra,* it was held: "Mental suffering is an element for which damages may be recovered in an action for slander, and such suffering may be increased, and the damages consequently enhanced, by the fact that the members of the plaintiff's family suffer by reason of the disgrace visited upon him or her by the slanderous charge." Evidence that plaintiff was a married man is admissible, as held in *Morey v. Morning Journal Ass'n,* 20 Am. St. Rep. 730 (123 N. Y. 207), "as bearing upon the hurtful tendency of the libel and the general damage to which he was exposed." There can be no doubt but that the fact that one libeled has a family is an important circumstance which bears upon the question of damages, and this is so because the members of the family suffer by reason of the disgrace visited upon the father and husband. For it is apparent that not only is the finger of scorn, ridicule, disgrace and shame pointed to the father, but also is directed toward the family; and, because of this fact, his damage is the greater and his mental suffering accordingly increased. But we do not understand that the mental suffering experienced by the members of his family, nor the effect thereof upon him, can be taken into consideration for the purpose of enhancing the damages which he is entitled to recover. The mental suffering for which one libeled may recover must be the direct, immediate and proximate effect of the publication. Such mental suffering, therefore, must be that which the plaintiff expe-

rienced because the libelous article exposed him to public hatred, contempt or ridicule. Upon thorough research we are unable to find where the competency of such evidence has ever been adjudicated. The above cited cases do not go to this extent. The only case bearing on the question considered which we have been able to find is *Flam v. Lee*, 116 Ia. 289, wherein it is held: "In an action for malicious prosecution it was not error to permit plaintiff to show that on his arrest at his home his mother fainted or was prostrated by the shock, and that plaintiff thereby suffered distress of mind." The reasons for the rule are given in the opinion as follows: "But the principal basis of recovery in most actions of this kind is mental suffering and anguish arising from the wrongful charge and arrest, and, if the arrest be made in the presence of one's family or friends, bringing him into shame and humiliation before them, it is a proper matter to be considered as bearing upon the pain inflicted upon him. If, then, in addition to the indignity of his arrest, he sees, as the effect of such act, his wife or mother fall in a faint, and he is forced to leave her in such prostrate and suffering condition, we see no reason why this increased pain, which naturally follows such a situation, shall not be an element in assessing his damages, if he is found entitled to recover at all." The nature of the action, the unwarranted removal of the plaintiff from his family upon a false accusation of murder, we think is sufficient to distinguish that case from this. There the plaintiff through the wrong inflicted was taken upon his arrest from his mother, who was in great distress. From the opinion it appears that the rule announced in the syllabus was followed, partly at least, because plaintiff was "forced to leave her in such a prostrate and suffering condition."

We have considered the harm and the benefits which would result from the adoption of a rule which would permit the admission of such evidence, and are apprehensive that its adoption and application would meet with considerable difficulty. Would the rule apply only when

the plaintiff had observed the demonstration of his wife's mental suffering, or would it also be extended to the litigant who had not observed the evidences of his wife's distress, although conscious that she suffered, and whereby he himself was distressed? Should the defendant in libel be permitted to prove that the plaintiff's wife experienced or demonstrated no grief? Yet, if the rule is adopted, the defendant would be permitted to refute the evidence, which the plaintiff would be permitted to introduce. Can it be considered that a man with a large family is entitled to recover greater damages under otherwise like circumstances than a man with a smaller family? In the event that some of plaintiff's family experienced grief and others did not, what rule then would apply? If the emotional feelings demonstrated by a plaintiff's wife are caused through love and sympathy, is that not a benefit to him instead of a damage? If the libelous article alienates her affections, his damages are thereby increased, according to a former decision of this court. *Case v. Case,* 45 Neb. 493. If some of plaintiff's family demonstrate hatred as a result of the publication and some sympathy, should he be allowed damages by reason of the effect either condition has upon his mind? If the wife remained indifferent, her husband might and probably would suffer by reason thereof. It is not our purpose to argue that the emotions experienced by a wife under such circumstances, no matter what form they may take, may not be distressing to the husband. Although her sympathy may be of value to him, yet the fact that it is required or made necessary by the illegal act of the defendant would naturally cause him distress. But it cannot be said as a matter of law, nor does it seem susceptible of proof, that a husband, under circumstances such as surrounded the plaintiff herein, was damaged more than he would have been had the conduct and emotions of his wife been different. Even if such damage could be considered the proximate result of the wrong done, it is so difficult of measurement that it seems necessary to exclude it en-

tirely. Mental distress caused by sympathy for another's suffering is not a recoverable element of damage. It is true that the publication complained of was the cause of the wife's grief, but to permit the plaintiff to recover because his mental suffering was thereby made the greater would be to permit him to recover because of his sympathy for her. We arrive at no satisfactory conclusion except that the plaintiff in an action to recover general damages for libel may only prove in this regard the fact that he has a wife and children and their position in society.

3. Two days after the publication of the article in controversy the plaintiff visited Mr. Polcar, the editor of the Daily News, and was permitted over objection to testify that in a conversation then had the plaintiff requested Mr. Polcar to publish a letter which plaintiff had written in answer to Thomas's speech; that the reason he wanted the letter published was because he understood that everybody up in Logan and Harrison counties, Iowa, where the criminal proceedings were pending against plaintiff, looked to the Daily News to get the inside facts in regard to plaintiff's case, and that the Bee and the World-Herald and other daily papers in which the alleged libelous article had also been published had agreed to publish the plaintiff's letter. He was also permitted to prove that the World-Herald had published the same. The admission of this testimony was error. The article was libelous *per se*, and the amount of plaintiff's recovery must be determined by the damages which flow from the acts of the defendant complained of, and not by reason of its omission to publish the article which the plaintiff requested. Defendant's refusal to publish the plaintiff's letter could be construed only as evidence of defendant's malice in publishing the alleged libelous article. But even then the evidence would be incompetent for the purpose of enhancing the plaintiff's recovery. *Bee Publishing Co. v. World Publishing Co.*, 59 Neb. 713. Again, it must be remembered that Thomas's speech was also published in

the Bee and the World-Herald, two daily newspapers of the city of Omaha of wide circulation. By the objectionable evidence the plaintiff proved that the editors of these two papers had agreed to publish the plaintiff's answer to the alleged libelous article in the other papers, and proof of defendant's refusal to publish the same would only tend to enhance the amount of plaintiff's recovery, for which purpose it was evidently intended. The conduct of other publishers, who also published the alleged libel, in their apparent attempts to lessen the evil results of their publications is laudable, but in no proper manner can such conduct be considered by the jury for the purpose of determining whether or not the defendant had committed a wrong, or for the purpose of measuring the damage, if a wrong had been done. Many courts of high standing have held that evidence of defendant's refusal to publish a retraction is admissible. But the purpose of such evidence is to prove malice; and, so far as the author of this opinion has observed, the rule is not followed except in jurisdictions permitting the recovery of punitive damages. The above evidence related to a part of a conversation which plaintiff contends was properly admitted for the purpose of showing to whom the article referred. The remainder of the conversation related to statements of Mr. Polcar that he knew that plaintiff was the person referred to. Mr. Polcar was not an officer of the defendant. It is not shown that he saw the article or knew of it before its publication. His admissions made two days subsequent to the publication do not form a part of the *res gestæ*. We do not say that the evidence of Polcar's admissions was prejudicial; but, if without prejudice, that fact would not justify evidence of the conversation, a part of which related to a refusal to publish plaintiff's answer to Thomas's speech.

4. Upon the cross-examination of the witness Polcar, he was required over objection to testify that at the time of the publication of Thomas's speech he considered and supposed that it related to the plaintiff. He had

previously testified that he did not know that it referred to the plaintiff. The evidence objected to should have been excluded. Whatever the witness supposed or considered in this regard is immaterial. Plaintiff, however, suggests that this evidence, as well as plaintiff's testimony above referred to regarding Polcar's admissions, is without prejudice, as it is otherwise well established that plaintiff is the person referred to in Thomas's speech. Plaintiff's competent evidence fairly establishes the fact that he is the person referred to by Mr. Thomas. No attempt was made to prove the contrary. Defendant tried the case upon the theory that plaintiff was the person whose character was assailed by the publication. If the case depended upon this assignment of error, we doubt that we could recommend a reversal. However, upon another trial this evidence should, and undoubtedly will, be omitted.

Defendant further urges that the judgment is excessive. It is unnecessary to consider this assignment. The errors above referred to as prejudicial are so because their tendency is to enhance the damages; and, as the case must be remanded for a new trial, the amount of recovery will be determined from the evidence then taken. Neither do we consider an assignment of error alleging misconduct on the part of plaintiff's counsel. This alleged misconduct pertained to statements made in open court, before the jury, relative to publications in the defendant's paper at about the time the jury were impaneled to try the case. Upon another trial it is not probable that such publications will be repeated, nor counsel animated to conduct similar to that complained of here.

We recommend that the judgment of the district court be reversed and this cause remanded for a new trial.

CALKINS, C., concurs.

DUFFIE and FAWCETT, CC., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and this cause remanded for a new trial.

REVERSED.