Robert E. REICHENBERG, Jr., Plaintiff,

v.

Dr. Edwin NELSON, President, Chadron
State College, Defendant.

Civ. No. 1630L.

United States District Court,
D. Nebraska.

March 10, 1970.

Wallace M. Rudolph, and Patrick W. Healey, Lincoln, Neb., for plaintiff.

Bevin B. Bump, Chadron, Neb., Laurice Margheim, Alliance, Neb., for defendant.

### MEMORANDUM and ORDER

VAN PELT, District Judge.

Robert E. Reichenberg, Jr. brought this action on January 21, 1970 to prevent the defendant, Dr. Edwin Nelson, who is President of Chadron State College, from denying him registration at the College for the second semester. He claims he was denied registration on January 20th because his hair and mustache failed to meet the requirements of the College dress code. Jurisdiction is claimed under the Civil Rights Act, 42 U.S.C.A. § 1983.

A hearing was had upon an application for a restraining order, at which time arrangements were made for plaintiff to attend classes awaiting a hearing on the merits. The parties agreed to an early hearing which the court set for February 9, 1970. Following the two day hearing at which evidence was offered by both parties, the court announced its findings and ordered that plaintiff and two other students be permitted to register. This memorandum will constitute the findings of fact and conclusions of law of the court.

Plaintiff, age 24, is a citizen of the State of Nebraska. He is a veteran of the United States Armed Forces. He entered Chadron State College under the provisions of the G.I. Bill in September, 1969 and completed the first semester satisfactorily. His grades were slightly above average.

On September 18, 1969 a dress code for students at Chadron State College was adopted. This code included a provision reading:

> "MALE STUDENTS must be clean shaven (*neat* mustaches and side burns excepted) and must not wear long hair." (emphasis in original)

During the week of January 9 to 16 of 1970, a clarification of the code was adopted. The changes here relevant provide:

> "Male students will wear their hair short enough that eye brows, ears, and collars are in full view. Side-burns will be no lower than the ear lobe, and mustaches will be trimmed even with the mouth.

"ALL MEN REGISTERING FOR SECOND SEMESTER CLASSES WILL BE EXPECTED TO MEET THE ABOVE STANDARDS."

It should be noted that it is not entirely clear where this clarification originated. There are groups within the campus structure which act in the area of student affairs. These groups include the Student Senate, Faculty Senate, and the Campus Affairs Committee. It would appear from the evidence that the January clarification was recommended by the Campus Affairs Committee and later approved by Dr. Nelson.

The procedural genesis of the regulation is not determinative of this case. It is clear from the evidence that the above noted committees act solely in an advisory capacity. Dr. Nelson, as Presi-

dent of the College, has the ultimate authority and he may accept, reject, or modify a code such as we have here. All appeals from enforcement of the code are subject to final administrative review by him.

Plaintiff, as above noted, was a student in good standing at Chadron the first semester of the 1969–70 academic year. No disciplinary action was taken against him and he was not cited for any violation of the dress code as it then existed. Plaintiff had a mustache and sideburns at the time he enrolled at the College. Photographs introduced into evidence indicate that the mustache plaintiff is presently wearing is substantially similar to his mustache when he enrolled in September. His sideburns were shorter at that time. See Exhibits 16 and 17. A photograph of Reichenberg which appeared in the college newspaper of January 9, 1970 shows his appearance to be substantially the same at that time as when he appeared at the trial. Exhibit 11.

In preparing to register for the second semester, plaintiff anticipated trouble in registering in that his sideburns did extend below the ear lobe and his mustache extended below the corners of his mouth. Plaintiff, with three others, met with Dr. Nelson on Sunday, January 18, 1970 and requested him not to refuse registration to those who did not comply with the so-called clarification. Registration was to take place on January 19 and 20. They also requested that Dr. Nelson address an assembly of students on the subject. Dr. Nelson refused both requests.

On January 20th plaintiff presented himself for registration for the second semester and was turned away by Donald Duncan, the Director of Housing for the College, who told him he could not register until he trimmed his mustache and hair. Plaintiff then filed this suit.

■■ The statute relied on by plaintiff provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983

This statute, of course, provides the basis for a substantive claim for an individual so injured. Jurisdiction of the claim is vested in this court by virtue of 28 U.S.C.A. § 1343. By way of answer, the defendant has challenged the power of the court to hear this matter invoking the doctrines of exhaustion of state remedies and abstention. While these principles will hereafter be discussed at greater length, it is sufficient at this point to note that these doctrines are based upon the theory of comity and are not jurisdictional bars as such. Therefore, the court finds that it has jurisdiction over both the parties and the subject matter.

■ Plaintiff sought to maintain this suit as a class action under Rule 23 of the Federal Rules of Civil Procedure. In the ruling announced at the conclusion of the trial it was held that this was not a class action. The pertinent part of Rule 23 provides:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impractical * * *."

There was evidence that several students had been refused registration for failure to meet the dress code requirements. However, only three students continued to be refused registration on this basis; the others apparently deciding to conform to the regulations. The court finds that three persons are not sufficient to meet the class action requirements of Rule 23. Lucas v. Seagrave Corporation, 277 F.Supp. 338 (D.C. Minn.1967); Foster v. Mobile County

Hospital Board, 398 F.2d 227 (5th Cir. 1968).

■ In the court's order announced orally at the conclusion of the trial, when a portion of the relief requested was granted, the order was extended to include two individuals, to-wit, John S. Streep and Donald Hume, who were not, until that time, parties to the suit. This seemed appropriate under the facts presented. Rule 21 of the Federal Rules applies to misjoinder and non-joinder of parties:

"Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party *or of its own initiative at any stage of the action and on such terms as are just.*" (Our emphasis)

Common questions of law and fact existed as to plaintiff and as to Streep and Hume. To exclude them from the ruling in this case would not serve the purpose of judicial economy and would expose the defendant to subsequent suits involving the same issues. Accordingly, the court, on its own motion, in accordance with Rule 21, added, and now confirms the adding of, John S. Streep and Donald Hume as parties plaintiff in this action. Rekeweg v. Federal Mutual Insurance Co., 27 F.R.D. 431 (N.D.Ind.1961).

Turning to the issues of abstention and exhaustion of state remedies, raised by answer and relied on in the oral arguments and briefs, it is clear that none of the three plaintiffs utilized the administrative appeal procedures available when registration was refused. No resort has been had to the state courts. These doctrines are closely entwined. Both are bottomed on the hesitancy of federal courts to involve themselves in areas which are of primarily state concern until such time as the orderly processes of the state have run their course.

The court concluded that the instant case is not an appropriate one for the application of either of these principles. Justice Douglas, writing for the majority, in McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) commented on these doctrines and their relationship to cases brought under 42 U.S.C.A. § 1983:

"Where strands of local law are woven into the case that is before the federal court, we have directed a District Court to refrain temporarily from exercising its jurisdiction until a suit could be brought in the state courts. [Citations omitted] Thus we have stayed the hands of a Federal District Court when it sought to enjoin enforcement of a state administrative order enforcing state law, since any federal question could be reviewed when the case came here through the hierarchy of state courts. * * *

"We have, however, in the present case no underlying issue of state law controlling this litigation. The right alleged is as plainly federal in origin and nature as those vindicated in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. Nor is the federal right in any way entangled in a skein of state law that must be untangled before the federal case can proceed. For petitioners assert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment. It is immaterial whether respondent's conduct is legal or illegal as a matter of state law." *Id.* at 673–674, 83 S.Ct. at 1436.

■■ This leads to consideration of the merits of the case. Courts are reluctant to interfere with the relationship existing between student and administrator within the school system unless conflicts arise which "directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). However, it is also clear that students do not leave fundamental rights on the school doorstep as they enter. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1968). Therefore, when the state, acting through its public schools, abridges

or limits a right guaranteed to the individual by the Constitution, it bears a substantial burden of justification. Griswold v. Connecticut, 381 U.S. 479, at 505, 85 S.Ct. 1678, 14 L.Ed.2d 510.

This is not the first court to consider a case brought by a student who has been refused admission to a public school because hair was too long. In fact, numerous courts have ruled in this area. Richards v. Thurston, 304 F. Supp. 449 (D.Mass.1969); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala. 1967); Breen v. Kahl, 296 F.Supp. 702 (W.D.Wis.1969) aff'd Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969); Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala.1969); Crews v. Cloncs, 303 F.Supp. 1370 (S.D. Ind.1969); Ferrell v. Dallas Independent School District, 261 F.Supp. 545 (N.D.Tex.1966) aff'd 392 F.2d 697 (5th Cir. 1968); Sims v. Colfax Community School District, 307 F.Supp. 485 (D.C. Iowa 1970); Davis v. Firment, 269 F. Supp. 524 (E.D.La.1967), aff'd, 408 F.2d 1085 (5th Cir. 1969); Westley v. Rossi, 305 F.Supp. 706 (D.C.Minn.1969).

■ The state of the law as it exists today is fairly summarized by Judge Kerner of the Seventh Circuit in Breen v. Kahl, *supra*.

"The right to wear one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution. [citations omitted] Whether this right is designated as within the 'penumbras' of the first amendment freedom of speech, see Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), or as encompassed within the ninth amendment as an 'additional fundamental right[s] * * * which exist alongside those fundamental rights specifically mentioned in the first eight amendments' Griswold v. Connecticut, 381 U.S. at 488, 85 S.Ct. 1678 (J. Goldberg concurring), it clearly exists and is applicable to the states through the due process clause of the fourteenth amendment.

To limit or curtail this or any other fundamental right, the state has a 'substantial burden of justification.'"

At the close of the plaintiff's testimony, defendant moved for summary judgment, claiming that Reichenberg had failed to establish that he had been excluded from registration at Chadron State College. The motion was overruled and this position is here reaffirmed. Plaintiffs, Reichenberg, Streep and Hume were each refused admission to the college. Such refusal was solely by reason of their noncompliance with the January 9 clarification of the dress code.

Before proceeding to the question of justification of the regulation, it is necessary to comment briefly on one issue raised by the defendant in this case. Defendant argues that attendance at Chadron State College is not a right but a privilege, and that if attendance is not a right, then refusal on the part of the College to admit a student does not violate any federally protected right and the student cannot maintain a suit such as this.

■ The court finds this argument to be without merit. We are concerned here with the right of a student to wear his hair as he desires. Even assuming attendance at Chadron State College is a privilege, the College cannot refuse entrance to one in all other respects qualified because he chooses to exercise his constitutional rights. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L. Ed. 216 (1952).

Thus we turn to the question as framed by Judge Hanson in Sims v. Colfax Community School District, *supra*:

"[S]chool hair rules are reasonable, thus constitutional only if the school can objectively show that such a rule does in fact prevent some disruption or interference of the school system."

In the court's comments from the bench at the conclusion of the trial, it was noted that the burden is upon the state officials to show the reasonableness of the hair regulation. It was pointed out that

this burden, as heretofore mentioned, is substantial.

The evidence is conclusive, and the court finds, that there has been no disruption of classes at Chadron State College by virtue of individuals with long hair being in attendance. Dr. Nelson testified that a mustache or long hair, limited perhaps to mustaches and hair of the length worn by the three here involved, presents no health or safety danger. It must be pointed out, as the court did orally, that this is not the usual long hair case. The hair is not shoulder length. No claim was made that the eyebrows, ears or collars were not in full view.

The testimony that was offered in justification of the hair length regulation may be fairly summarized as follows:

1) Students whose appearances conform to the regulation perform better in school, both in strictly academic work and in extracurricular activity, than those whose appearances do not conform.

2) Presently Chadron graduates are highly sought after as teachers in the state. If students are allowed to attend the College wearing hair or mustaches in violation of the regulation, this will reflect adversely upon the College and thus on future graduates.

3) There are difficulties in placing students with hair and mustaches in violation of the regulation in student teaching positions as area high schools are reluctant to accept them.

4) Students conforming to the regulation will have an easier time finding a job upon graduation than those who do not conform.

The first contention, that people with long hair and mustaches do not perform as well as those with short hair, was supported by the testimony of Dr. Bruce Bartels, a Chadron College official. No empirical data or studies were introduced to this effect. It is rather the opinion of Dr. Bartels. Without being critical of Dr. Bartels, we note that he has been associated with Chadron College for a period of eight years, during which time a dress code was in effect. Thus, he has had little opportunity to observe the comparative performance of conforming versus non-conforming students. He could not refer to any studies supporting his conclusion. When questioned concerning the particular dress clarification in question, he was unable to state that a mustache such as the plaintiff's which extended below the corner of the mouth would be more detrimental to the performance of academic work than a mustache which was even with the corner of the mouth. This claim is not supported. Chadron is the only one of the four similar state colleges in Nebraska which has such a rule. The court has observed and been connected with college education in Nebraska for many years and cannot conclude that Chadron stands above Peru, Kearney or Wayne.

Turning to the defendant's second contention, which must be classified as highly speculative, the court concludes that even if true this does not supply the necessary justification for the rule. To accept this justification, is to accept the theory that the exercise of constitutional rights adhering to the individual is governed by the prejudices and biases of others, thus negating fifteen years of constitutional law developed since Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

The last two contentions of the defendant similarly fail to provide the requisite justification. There is no evidence that Chadron State College has been unable to place a male student in a student teaching position by virtue of his hair or mustache. Nor has any evidence been offered that it is more difficult to place such individuals in jobs upon graduation. It should be noted that if this is the case, it would place the impetus to conform on the student. Assuming that student teaching is a required course for graduation and if, after a good faith at-

tempt on the part of the school to place an individual in student teaching, they have failed by virtue of hair length, the student at that time must decide whether to trim the hair to the desired length or fail to meet the requirements for graduation. While colleges are concerned with the placement of their graduates after graduation, and rightly so, it is again the prerogative of the student to decide where he will work and under what conditions.

The court cannot say, based upon the foregoing, that the Chadron State College officials have met the burden imposed upon them by the law of showing justification for the January 9 clarification or that as applied to the three before the court, that the rule is reasonable.

It is ordered that the plaintiffs in this case, Robert E. Reichenberg, John S. Streep and Donald Hume be allowed to register at Chadron State College.

It is further ordered that costs in this case be taxed to the defendant, with the exception of attorneys fees which, for the reasons heretofore stated by the court at the February 9 hearing, are to be borne by the respective parties.