**Gwynn H. GILLIAM, Plaintiff,**

v.

**CITY OF OMAHA, a Municipal corporation, et al., Defendants.**

**Civ. No. 71–0–155.**

United States District Court,
D. Nebraska.

Sept. 8, 1971.

**5**

ing #3], pursuant to Rule 12 of the Federal Rules of Civil Procedure.

This is a civil rights action, jurisdiction being predicated upon 28 U.S.C. §§ 1331 and 1343; 42 U.S.C. §§ 1981 and 1983.

Plaintiff, a Negro woman, alleges that she was employed as a counsellor for the City of Omaha Neighborhood Youth Corps, a federally funded project operated by the City of Omaha under contract with Greater Omaha Community Action. She began as a counsellor on December 2, 1967, and alleges that from that time until she resigned on April 10, 1970, she was the only counsellor in the program who was black, the only woman counsellor, and the only counsellor who had a college degree.

She alleges that she began employment at a salary of $600 per month and that during her tenure received one salary raise of $25 per month, or 4% of her salary, while white male counsellors, who were allegedly high school drop-outs or had long arrest records, received salary increases of approximately 18¼% at frequent intervals.

Plaintiff further claims that defendant Boniauto advised plaintiff that he could not secure funds either to give her a raise or to promote her in accordance with her training and experience, but that these statements were false and said raises and promotions were withheld from plaintiff solely because of her race and sex.

Plaintiff also alleges that Boniauto constantly harassed her because of her race and sex, repeatedly referred to her as "that black bitch," and ran down her abilities before trainees and others. She claims that as a result of Boniauto's alleged treatment of her, she suffered mental and emotional strain which caused her to secure medical assistance and expend moneys for medication.

On the basis of the foregoing allegations plaintiff seeks damages in the sum of $10,000.

Benjamin M. Wall, of Foulks, Wall & Wintroub, Omaha, Neb., for plaintiff.

Kent N. Whinnery, Asst. City Atty., for defendants.

## MEMORANDUM

ROBINSON, Chief Judge.

This matter comes before the Court upon defendants' motion to dismiss [Fil-

Plaintiff is also seeking to recover punitive damages in the sum of $1,500,000. In support of this claim she alleges that the funds for the City of Omaha Neighborhood Youth Corps were provided by the Federal Government for the purpose of ameliorating the lot of minority people, but that under the administration of the defendants, the funds were used to achieve the exact opposite.

Plaintiff claims that the defendant City's contract with Greater Omaha Community Action required it not to discriminate and to take affirmative action to assure employees were treated fairly, but that said contract was breached in this regard. She contends that although these breaches of contract were brought to the attention of defendant, Mayor Leahy, he refused to take corrective action, and as a result of the contract breaches and allegedly unconstitutional practices, the United States Department of Labor instructed Greater Omaha Community Action to cancel the contract in question.

Plaintiff further alleges that while these charges were pending before the Nebraska Equal Opportunity Commission, defendant Leahy improperly caused one of his aides to approach plaintiff and advise her that the City would settle with her and that she should not allow her lawyer to talk her out of it, but in fact no settlement was ever offered.

Defendants have moved to dismiss the action for a number of reasons. First, it is contended that the Complaint fails to state a claim upon which relief can be granted.

It is true that the allegations of the complaint are somewhat broad and indefinite. For example the allegation that some of the white male counsellors received salary increases of 18¼% is meaningless without an allegation of what amount the 18¼% relates to. Thus, it could be that while plaintiff who was making $600 per month and received a 4% increase, a white male counsellor was making only $200 per month and received a 18¼% increase. Such facts if proven certainly would not establish that plaintiff had been discriminated against because of race or sex. The complaint in several other instances fails to set forth facts which if proven would establish discrimination or damage.

■ However, the complaint must be viewed as a whole, and despite the vagueness of some allegations, when so viewed, this Court is of the opinion that it might be possible for plaintiff to prove a set of facts which would entitle her to relief. Federal Rules of Civil Procedure 8[a]; Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 [1957]; Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 [1947]. In fact, it would seem that under the rationale of some cases, all a plaintiff has to do is file a piece of paper with his and the defendant's name thereon, and he is at least in court. Dioguardi v. Durning, 139 F.2d 774 [2d Cir. 1944].

■ The defendants also urge dismissal on the grounds that the complaint fails to raise a cognizable federal constitutional question. However, the complaint alleges plaintiff has been discriminated against on account of race and sex. This is sufficient to raise a federal constitutional question. See McNeese v. Board of Education, 373 U.S. 668, 83 S. Ct. 1433, 10 L.Ed.2d 622 [1963]; Yarbrough v. Hulbert-West Memphis School Dist., No. 4, 380 F.2d 962 [8th Cir. 1967].

Defendants further assert that the action should be dismissed because plaintiff has failed to exhaust her state remedies and this Court should therefor abstain from exercising jurisdiction. The motion also points out that a charge styled Gwynn H. Gilliam v. City of Omaha Neighborhood Youth Corps, Number Neb. 70-6-247, is now on file with the Nebraska Equal Employment Opportunity Commission, and has not yet been resolved. That commission is empowered to enter an order "requiring such respondent to cease and desist from such unlawful employment practice and order

such other affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay."

■ The doctrines of abstention and exhaustion of state remedies "are closely entwined," Reichenberg v. Nelson, 310 F.Supp. 248, 251 [D.Neb.1970], and are "bottomed on the hesitancy of federal courts to involve themselves in areas which are of primarily state concern until such time as the orderly processes of the state have run their course." *Id.* Thus the application of either doctrine lies within the judicial discretion of the Court.

■ It is true that exhaustion of state administrative remedies is unnecessary when they are inadequate. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 [1963], or when pursuit thereof would most likely be futile, Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed. 2d 647 [1967]; King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 [1968]; Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 [1968].

Under the Nebraska Fair Employment Practice Act § 48–1119[3], the Equal Employment Opportunity Commission may award back pay, which remedy would be equivalent to a recovery by her in this Court on her primary claim. Thus, as to her primary claim plaintiff's state administrative remedy is adequate. There is also a provision in the Act for a direct appeal to the state district court, from the decision and order of the Commission. *See* Neb.Rev.Stat. § 48–1120 [1968].

However, plaintiff in this action is also seeking punitive damages, which, of course, may be granted by a federal court in civil rights actions, if appropriate. In Wayne v. Venable, 260 F. 64, 66 [8th Cir. 1919] Circuit Judge Sanborn stated that an action for damages in a federal court could be maintained by a qualified voter for wrongful deprivation of his Constitutional right to vote for a member of Congress at a general election. "In the eyes of the law this right [to vote] is so valuable that damages are presumed from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of damages is a question peculiarly appropriate for the determination of the jury, because each member of the jury has personal knowledge of the value of right.", citing Scott v. Donald, 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632 [1897]; Wiley v. Sinkler, 179 U.S. 58, 21 S.Ct. 17, 45 L.Ed. 84 [1900]. Although deprivation of a right to vote is not identical to a deprivation of a right not to be subjected to Constitutionally impermissible discrimination, the two situations are analogous. Punitive damages have been awarded in a number of civil rights cases, even where there is no actual damage, Basista v. Weir, 340 F.2d 74 [3d Cir. 1965]; Caperci v. Huntoon, 397 F.2d 799 [1st Cir. 1968] cert. denied, 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 [1968]; Solomon v. Pennsylvania R. R., 96 F.Supp. 709 [S. D.N.Y.1951]; Washington v. Official Court Stenographer, 251 F.Supp. 945 [E.D.Pa.1966], apparently upon the premise that the only way the particular Constitutional right involved in each case could be fully protected and preserved, was by an award of such damages.

In Nebraska punitive damages are considered to be repugnant to the State's public policy. In Abel v. Conover, 170 Neb. 926, 104 N.W.2d 684, 688 [1960], the Nebraska Supreme Court said:

"It has been a fundamental rule of law in this state that punitive, vindicative, or exemplary damages will not be allowed, and that the measure of recovery in all civil cases is compensation for the injury sustained. This rule is so well settled that we dispose of it merely by the citation of cases so

holding. Boyer v. Barr, 8 Neb. 68, 30 Am.Rep. 814; Atkins v. Gladwich, 25 Neb. 390, 41 N.W. 347; Bee Publishing Co. v. World Publishing Co., 59 Neb. 713, 82 N.W. 28; Wilfong v. Omaha & Council Bluffs St. Ry. Co., 129 Neb. 600, 262 N.W. 537."

The Nebraska Equal Employment Opportunity Commission may require an employer who has engaged in an unlawful employment practice as defined in the Nebraska Fair Employment Act, to cease and desist from such practice and may also order "such other affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay." Neb.Rev.Stat. § 48–1119[3] [1968]. The Act does not, however, specifically provide for an award of punitive or exemplary damages.

Section 48–1104 of the Nebraska Fair Employment Practice Act provides:

*"Unlawful employment practice for an employer.* It shall be an unlawful employment practice for an employer:

"[1] To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"[2] To limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

It should be noted that while discrimination in employment on the basis of race, color, religion, sex, or national origin, is made unlawful under the aforesaid statute, *such discrimination is also unconstitutional under the Fourteenth* Amendment to the United States Constitution. Thus, an act of discrimination on any such basis would at the same time be a violation of the state statute and the United States Constitution. Thus, when the Nebraska Equal Employment Opportunity Commission is called upon to consider such an act by an employer as an unlawful employment practice it is at the same time called upon to consider the act as a violation of the Federal Constitution.

■ This Court is of the view that while an award of punitive damages by the Commission is not required for a statutory violation, because such an award would be violative of Nebraska public policy, such an award is required whenever appropriate, to fully preserve and protect any Federal Constitutional right involved in any case coming before the Commission. This view is of course based upon the premise implicit in Judge Sanborn's holding in Wayne v. Venable, supra, that a violation of a constitutional right may go wholly unredressed unless punitive damages can be awarded in appropriate cases. *See also* the opinion of Justice Holmes in Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 [1927].

■ If punitive damages are necessary to fully vindicate a Constitutional right, when that right is before a federal court, then such damages are every bit as necessary when that right is before a state administrative commission or a state court. Basic Federal Constitutional rights cannot be watered down by state statutes or state court opinions. *Cf.* Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 [1963].

■ Since the Nebraska Equal Employment Opportunity Commission is empowered to take such affirmative action as may be appropriate to eradicate unlawful employment practices, Neb. Rev.Stat. § 48–1119 [1968], it can and must award punitive damages in an ap-

propriate case, whenever the unlawful employment practice is also an unconstitutional practice under the United States Constitution. The mere fact a Constitutional right is involved, however, does not of itself mean the case is an appropriate one for punitive damages, and in determining whether a given case calls for such damages the Commission and state courts should be guided by the federal civil rights cases wherein such damages have been deemed appropriate to preserve the particular Constitutional right involved.

Neither does this Court wish to intimate that the present case is necessarily a proper one for an award of punitive damages. This Court has discussed the point only to determine whether the plaintiff has a fully adequate state administrative remedy.

■ Since the Court has concluded that punitive damages are in fact awardable *in appropriate cases* [*i. e.,* where necessary to preserve a basic Federal Constitutional right] by the state commission, it follows that plaintiff's state administrative remedy is as adequate as her remedy in this Court.

Neither does this Court see any reason for concluding or presuming that plaintiff's state administrative action would be futile.

Although the exhaustion of remedies doctrine is not to be automatically applied in every case where there is a state administrative remedy available, King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 [1968], where, as here, the plaintiff has herself already initiated a state administrative proceeding before a state commission which is capable of affording her a full and adequate remedy, this Court is of the opinion a federal court action is at least premature and probably wholly unnecessary.

An Order will be entered pursuant to this Memorandum dismissing plaintiff's action.