Gary **MERCER**, Marc **Regberg**, Randy **Robins**, Plaintiffs,

v.

Jack L. **LOTHAMER**, as Principal, Glenwood High School, Fred Chase, as Superintendent, Plain Local School District, Board of Education, Plain Local School District, Defendants.

Civ. No. C 70–1123.

United States District Court,
N. D. Ohio, E. D.

Jan. 7, 1971.

James R. Gregg, Peter M. Lipman, Canton, Ohio, for plaintiffs.

James Snively, Asst. County Prosecutor, Stark County, Canton, Ohio, for defendants.

## MEMORANDUM OPINION

KRUPANSKY, District Judge.

Plaintiff students seek to permanently enjoin the principal of Glenwood High School, the Superintendent and Board of Education of the Plain Local School District from enforcing the provisions of the Plain Local Schools' Dress Code, particularly that provision which concerns the acceptable length of hair for male students.

Jurisdiction of this Court is invoked under Section 1343(3) and (4) of Title 28 and Section 1983 of Title 42, U.S.C. Plaintiffs assert that the defendants have acted and threaten under color of law to deprive the plaintiffs of rights, privileges and immunities guaranteed them by the Constitution of the United States.

Plaintiffs Gary Mercer, Marc Regberg and Randy Robins are, respectively, 16, 16 and 17 years of age. They are all students at Glenwood High School, one of two senior high schools in the Plain Local School District, Canton, Ohio. The other high school within the school district is Oakwood High School.

From the evidence it appears that growing unrest among the high school students within the school district, arising from the long hair styles of a number of male members of the student body, prompted the creation of a study commission in May of 1970 charged with the mission of exploring and considering the merits of recommending to the Plain Local School District the promulgation of a student dress code designed to offer guidance and direction to the school

community, as to the highly controversial matters of student dress and grooming.

The testimony does not clearly indicate the manner in which the individual members of the committee were selected.

The Committee, composed of six faculty representatives, three from each school, eight student representatives, four from each school, and four parent representatives, two from each of the high schools, convened during May of 1970 to accomplish its assigned task.

The evidence does not disclose any claim of imbalance in the representative membership of the Committee as it was constituted.

Divergent views and opinions were freely expressed, discussed and exchanged by the members meeting as a Committee of the whole and in sub-committee session. Subsequent to a vote upon each proposed recommendation, the Committee delegated the drafting of its resolutions to an unidentified member.

Final written recommendations were presented to the Plain Local School District by the Committee after having been circulated among and approved by its membership as to substance and accuracy.

On July 28, 1970, the District Board of Education adopted the Committee's recommendations as to the Dress Code and immediately thereafter mailed copies to all affected parents.

The Dress Code, introduced in evidence as Joint Exhibit No. 1, provides, in part, as follows:

\* \* \* \* \* \*

IV. *Grooming*

A. Hair should be clean and appropriately groomed.

B. Eccentric hairdos are not appropriate.

C. Length of boys' hair is not to cover the collar.

D. Beards are not appropriate.

E. Moustaches are to be neatly trimmed and not to extend below the lip line.

F. Sideburns are to be neatly trimmed and not extend below the line of the mouth.

*Administration*

Homeroom teachers are to report those students whom they feel are not appropriately dressed or groomed.

High school students, so identified, are to report immediately to an area designated for such by the building principal. A dress code panel, consisting of six students, appointed for such purpose by the Student Council and each serving for a period of no more than six weeks, and a faculty advisor, appointed by the building principal, will adjudge the validity of the report.

If found to be appropriately dressed or groomed, the student will be permitted to return to class. If found not appropriately dressed or groomed, the student must meet the requirements of the dress code prior to returning to class. A student found not appropriately dressed or groomed by the panel may appeal such decision to the principal or assistant principal whose decision will be final.

Repeated refusal to comply with the provisions of the dress code is sufficient reason for suspension. Credit will not be allowed for those classes missed as a result of an infraction of the dress code.

\* \* \* \* \* \*

The proceedings of the student, faculty, parent Dress Code Committee and the action of the Plain Local School District Board of Education in the promulgation of the Dress Code here in issue cannot be characterized as arbitrary or unreasonable.

On or about May 22, 1970, prior to the adoption of the present Dress Code, student unrest culminated in a student confrontation of long-haired males at Oakwood High School.

The principal of Oakwood testified that "several hundred students, in the

neighborhood of 350 to 400 students at least," gathered in the main hall of the school to shear a number of the surrounded long-haired students. Violence and injury were averted only by the foresight, planning and prompt, cooperative and decisive action of an alerted student leadership and faculty.

Prevailing student, parent and faculty apprehensions preceding the incident were evident from the principal's unrefuted testimony. At least one parent requested permission to excuse the attendance of her child from school on the rumored day of the confrontation. An unspecified number of long-haired students as well as conventionally groomed, earnest, knowledge-seeking students, male and female alike, attempting to avoid involvement, left school for the day as the impending incident approached and climaxed. Other students sought refuge in the principal's office. Forcible rescue of a number of long-haired students from the center of the disturbance was required by the principal and members of the faculty.

The events, emotional strains and threats preliminary to the incidents and the circumstances of the confrontation itself were described by the principal of Oakwood High School as very disruptive to the educational processes and the administration of the school.

A number of students testified that long hair worn by male students had not resulted in classroom distractions.

School administrators appearing as witnesses testified that long hair as worn by some male students posed a serious safety hazard in the various industrial arts classes having enrollments in excess of 450 students.

Testimony further developed that reasonable dress code requirements were directly related to the educational processes of awakening an awareness in the students of the value and necessity for personal discipline and order as well as proper grooming and etiquette.

In any event, since the enactment of the Dress Code there has been no recurrence of an incident similar to the confrontation of May 22, 1970.

The evidence disclosed some dispute about the general acceptability of the Code among students.

Thomas M. Leavenworth, a senior and president of the student council of Glenwood High School, reflected general student dissatisfaction with the Code.

Alan DiGianantonio, a senior at Glenwood, and president of the student honor society, editor of the school paper and a member of the student council, reflected student satisfaction with and acceptability of the Code. This opinion was concurred in by Raphael Lioi, a senior and president of the student council of Oakwood High School.

The evidence raised no serious contention that the Code has not been uniformly applied and enforced as to the entire student body.

Alleged infractions of the Code are reported to a panel of six students authorized to conduct a hearing, consider and dispose of the charge. The faculty advisor assigned to the student panel does not vote nor is he present when a vote is taken.

Adverse decisions of the student panel may be appealed to the principal and the assistant principal.

Plaintiffs readily concede that their shoulder-length hair (Plaintiffs' Exhibits 1, 2, 3 and 4) was, from the commencement of the school term in September, 1970, to the date of final action by the student panel in December, 1970, longer than the length prescribed by Section IV C of the Dress Code. Plaintiffs do not disclaim knowledge of the Code requirements.

It is not contended by plaintiffs that they were not accorded a hearing by the six-student panel or deprived of their appeal to the assistant principal.

It is implied by plaintiffs that the six-student panel was without authority to order compliance with the Code because its selection had not been in strict

compliance with the language of the Code.

From the testimony, two of the six students on the panel were appointed by the president of the student council from a list of first period study hall students, this being the only qualification for appointment to the panel. The remaining four students were also appointed from a list of first period study hall students. The evidence is not clear as to the manner of selecting these four students, however the appointments were not by the president of the student council.

There is an absence of proof to support bias, partiality or prejudice of any panel member. There is no meritorious contention that the faculty, administration or student faction exerted pressure or influence in the appointments. It is apparent from the evidence that the panel was completely impartial as to its membership and action. Although its selection was not in strict compliance with the Code, the selection conformed to the spirit and intent of that document.

The Supreme Court has repeatedly articulated the fundamental premise that, in the absence of infringement of constitutional rights, the responsibility for maintaining proper standards of decorum and discipline and a wholesome academic environment is not vested in the federal courts, but is committed to state and local authorities, including school officials.

In Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968), the Court stated:

> Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint * * * By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of the school systems and which do not directly or sharply implicate basic constitutional values.

Again in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 507, 89 S.Ct. 733, 737, 21 L. Ed.2d 731 (1969), the Supreme Court stated:

> [T]he Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.

See also Jackson et al. v. Dorrier, 424 F.2d 213 (6th Cir. 1970).

The commitment of formulating and applying these and similar standards of personal conduct, decorum and discipline to state and local authorities within the prescribed constitutional safeguards does not result in an erosion or invasion of individual civil liberties for the very reason that civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in excesses of unrestrained abuses. Cox v. New Hampshire, 312 U. S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941).

 Taken in its entirety the evidence and testimony support the conclusions that the legislative procedures applied by school officials in the promulgation and ultimate adoption of the present Dress Code by the Plain Local School District Board of Education were fair, reasonable, impartial and in keeping with democratic principles; the requirements of Section IV C of the Code directed to grooming and length of boys' hair are not arbitrary and unreasonable; the provision of the Dress Code dealing with hair length of male students is an aid to the maintaining of discipline and order in the school, as is evident from the absence of events similar to those of May 22, 1970, since the adoption of the present Code; long hair is a safety hazard in the industrial arts classes; the provisions of IV, C of the Dress Code

are reasonably related to teaching proper grooming, self discipline and etiquette; the implementation and enforcement of the Code are uniform and insure an adequate and impartial hearing before a student panel from which an appeal may be taken to the principal and assistant principal.

In the instant case the singular reason originally advanced to the student panel and assistant principal by each of the plaintiffs for wearing his hair as he did, and presently does, was that he liked it that way and it was his personal right to wear his hair as he wished. The hair styles as worn by these plaintiffs within the context of the evidence in this case are not expressions of opinion of the kind anticipated to bring the issues of this case within the pronouncements of *Tinker*, supra.

In view of the foregoing, the Court finds that the officials and Board of Education of the Plain Local School District acted within the scope of their authority, and did not abuse that authority.

█ The Court further finds upon all the evidence that the plaintiffs' contention that their constitutional rights arising under the First, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States have been violated is without merit.

█ Absent infringement of constitutional rights the federal courts will not interfere with state and school officials' responsibility for maintaining proper standards of school decorum and discipline.

Being persuaded that Jackson v. Dorrier, supra, represents the controlling case law in the matter at bar within this Circuit, an order will be entered denying the application for permanent injunction and dismissing the case at plaintiffs' costs.

This opinion shall constitute the Court's findings of fact and conclusions of law; Fed.R.Civ.P. 52(a).