327 F.Supp. 729 (1971)
Stanley RUMLER, a minor, by his Father and Next Friend, Harold Rumler; Frankie Nichols, a minor, by his Father and Next Friend, James Nichols, on their behalf and on behalf of all those similarly situated, Plaintiffs,
v.
BOARD OF SCHOOL TRUSTEES FOR LEXINGTON COUNTY DISTRICT NUMBER ONE SCHOOLS, Defendants.
Civ. A. No. 70-1080.
United States District Court, D. South Carolina, Columbia Division.
Heard March 25 and 26, 1971.
Decided May 17, 1971.
*730 Jack F. McGuinn, and Laughlin McDonald, Columbia, S. C., for plaintiffs.
J. Means McFadden, of Robinson, McFadden, Moore & Pope, Columbia, S. C., for defendants.
HEMPHILL, District Judge.
By their complaint filed December 4, 1970, and supplemental and amended complaint filed December 21, 1970, plaintiffs seek a judgment declaring that the regulations of the Board of Trustees covering the appearance of those students attending high schools in Lexington School District No. 1 violate the First, Eighth and Fourteenth Amendments and the right of privacy contained in the Bill of Rights to the Constitution of the United States and that such regulations are unconstitutional. They ask injunctive relief enjoining the Board of Trustees, (referred to hereinafter as Trustees), from disciplining any students for violation of these regulations; or, in effect, enjoining the Trustees from enforcing *731 the school regulations prescribing the standards of appearance to which the students must conform.
The regulations as to appearance of students are partially set out in paragraph 9 of the supplemental and amended complaint; and, in parts pertinent to the instant issues, are as follows:
STUDENT DRESS AND APPEARANCE[1]
People exhibit a rebellious and disturbing attitude in many ways. One of the most subtle but most telling and distractive ways is through oddities in dress and appearance. Such oddities constitute an outer symbol of inner turmoil. Very little positive good for anyone arises out of such influences.
1. Students are expected to come to school with conventional dress.
2. Extreme fads in clothing and grooming will not be tolerated.
3. Students are expected to be clean and neat. This means that boys will be clean shaven and that they will secure haircuts in keeping with conventional standards.
4. If there are students who are unable to afford these requirements, the school will try to assist in finding ways to finance them.
For purposes of orientation as to the background, this court first catalogues the procedures leading to this decision.

THE PARTIES
Plaintiff Stanley Rumler is seventeen years of age, and is in the senior class at Lexington High School. Plaintiff Frankie Nichols is sixteen, and is in the eleventh, or junior class, at Lexington High School. Their fathers, respectively, represent them because of their disabling minority.
The original complaint named the members of the Board of Trustees of Lexington School District No. 1[2] as defendants along with the Superintendent of the district, and three alleged principals of the district high schools. In a supplemental and amended complaint the defendants were designated, in the caption, as the "Board of School Trustees for Lexington County District Number One Schools", and alleges that the superintendent and principals are agents of the Board. This complaint admits the statutory authority of the Board to have district superintendents act for the Board.[3]

PROCEDURE
This is another "haircut" case, similar to those pitched in various federal forums of this country by minors, usually teenage *732 adolescents,[4] seeking to substitute their desires for the disciplinary judgment of their elders having responsibility for school administration. The original complaint, filed December 4, 1970, asked for a Temporary Restraining Order, pending a hearing, to be issued enjoining and restraining the defendants from enforcing or threatening to enforce the school regulation. This court refused to issue an injunction ex parte, but attempted to expedite, by issuing, on December 8, 1970, its Rule to Show Cause requiring defendants to appear January 4 and show cause why the preliminary injunction should not be issued. Conflicting schedules caused postponement of the hearing until January 6, 1971. At that hearing no evidence was presented and, on the basis of the apparent facts and applicable law, the court denied plaintiffs' motion for a preliminary injunction[5] orally from the bench, and issued a written order confirming such oral denial on January 11, 1971, filed the same date, having delayed while the court was engaged in a trial by a jury when the motion was heard and for the remainder of the week.
Shortly thereafter there appears to have been a conference between Chief Judge Haynsworth and the attorneys representing the parties herein, as a result of which plaintiffs cut their hair to comply with the regulations, were admitted to school, and special arrangements were made by the school officials to permit them to catch up with classes missed, and to take late and special examinations.
Also, a speedy appeal to the Court of Appeals was arranged.
The record herein contains a Notice of Appeal, filed January 14, 1971, from the order of this court of January 11, 1971, which refers to directions from the Chief Judge, that the entire record,[6] together with the briefs for the petitioners, be filed with the Court of Appeals not later than January 20, 1971, and that the brief of defendant-appellee be forwarded to that court no later than January 29, 1971. The notice of appeal also recites that no evidence was taken when the motion for the temporary or preliminary injunction was heard; but that, at the direction of Chief Judge Haynsworth, some fourteen or fifteen exhibits, consisting mostly of photographs and affidavits, be forwarded to the Court of Appeals for inclusion in the record.
After a hearing on February 3, 1971, the Court of Appeals for the Fourth Circuit issued its Per Curiam decision, 437 F.2d 953, in which, inter alia, it said:
This is the first long hair case to reach the Fourth Circuit but it comes to us factually undeveloped. * * * Applying standard rules of procedure, 3 Barron & Holtzoff, Federal Practice & Procedure, § 1431 et seq. (Wright ed.), we affirm without reaching the merits.
* * * We think the court below should advance this case on the calendar so that a final decision will predate appellants' next involuntary trip to the barber shop.
The district court's denial of a preliminary injunction is hereby Affirmed.
It appears that, at the conference (or hearing) before Chief Judge Haynsworth, attorneys for the parties agreed to try to work out a temporary arrangement whereby plaintiffs would cut their hair to conform to the school regulations, and the school authorities would give them extra time and special assistance to get ready for the term examinations, which were imminent, and this was done.
*733 Pursuant to the directions of the Court of Appeals,[7] this court set a date for hearing this case on its merits at the first date possible in view of court commitments, and the parties presented their witnesses and exhibits on March 25 and April 2, 1971, in court, concluding on the afternoon of April 2nd.
Paragraphs 5 and 6 of the supplemental and amended complaint allege that defendant is the Board of School Trustees of Lexington County District Number One, and is also the Board of Education of Lexington County. The answer denies that defendant is the Board of Education of Lexington County; and it appears that defendant is not both bodies. Defendant actually is the Board of Trustees for Lexington County School District No. 1, created and acting by Section 21-3411, South Carolina Code of 1962, as amended by Act No. 72 of the Acts of the General Assembly of South Carolina of 1967. The Lexington County Board of Education is created and exists by virtue of Section 21-3401, South Carolina Code of 1962. There are a number of school districts in Lexington County, and District Number One comprises the schools at Lexington, Pelion and Gilbert, attended by pupils in those attendance areas. Neither of plaintiffs have attempted pursuit of their remedies through administrative channels, nor asked for a hearing before the Board of Trustees. Neither has instituted any action in state court.

TESTIMONY
It is undisputed that on November 10, 1970, when plaintiff Rumler, who had been previously told by the high school principal that the length of his hair violated the regulations, was told that he was not to come back to school until he obtained a haircut that did comply. He seems to have hurt his leg that afternoon, and next presented himself at school on December 2, 1970 * * * with his hair still unshorn. He was told that he could not remain in school, refused to have his hair cut, and telephoned for his mother to come for him, telling her on her arrival, "Let's go get that lawyer." He testified that he had previously been in touch with a lawyer representing the A. C. L. U., who had stated that he would be represented in the contemplated action without cost to him or his family, and that he had this action in mind when he presented himself at school on December 2, 1970. The original complaint herein was filed on December 4.
Plaintiff Rumler did not get his hair cut, and remained suspended from school for the remainder of 1970. During that time plaintiff Nichols kept his hair cut to conform to the regulations  albeit unwillingly  and remained in school. When school resumed after the Christmas holidays, Rumler presented himself at school with something of a haircut; but, as it still was not in compliance with the regulations, he was sent home. At the same time Nichols came to school with hair that violated the prescribed length, and he was sent home until he got a haircut. At the initial hearing before this court, on January 6, 1971, neither plaintiff was in school.[8]
*734 Plaintiffs testified that they didn't cut their hair because they wanted to wear it long, and that there was no reason for the rule. Both professed ignorance as to the meaning of the word "conventional", but both admitted that they had been told that the rule required that their hair be cut so that it was "off their ears, above their eyebrows, and did not hang below their collars". Nichols admitted that he had had to be warned about the length of his hair on numerous occasions, dating back to two years prior to this time. Rumler knew of some disruptions at school caused by long hair, and admitted that he had gone to school without socks on in violation of the regulations. Nichols testified that the only disruptions caused by long hair of which he was aware was when the school administrators enforced the rule. Neither plaintiff testified to any particular reason for violating the rule except that he wanted to wear his hair long, and that there was no reason for the rule.
Mrs. Nichols, who criticized the Trustees bitterly for not showing her enough consideration, felt that the school administrators were persecuting her son. Both parents of the plaintiffs testified that they felt that they should stand behind their sons. All but Mrs. Nichols were familiar with the requirements as to hair length; and, as one parent testified, "I'm backing my son in this because someone's got to believe in him."
A sixteen-year-old from Keenan High School, in Columbia, testified that wearing long hair was a method of "free expression" of one's self. He also stated that he cut his hair in the summer, when his head began to itch. Just what was meant by free expression he never explained; but, as best as can be gathered from his testimony, it is an expression of one's individual personality. It appeared, from his testimony, that Keenan High School, in a heavily populated residential area, has no dress code. On cross examination it developed that there had been some disturbances and parental dissatisfaction with discipline; but the witness insisted that these dissatisfied parents were a small minority.
Dr. Conrad Powell, who is on the faculty of the School of Education of the University of South Carolina at its integration center testified that, in his opinion, the wearing of ultra long hair is something like a protest against discipline, akin to the feeling "Don't treat me like a baby." His remedy for ultra long hair is to "communicate", rather than take any disciplinary measures. Dr. Powell agreed that some discipline and some regulation are necessary, but felt that hair should not be regulated, and that a pupil should be permitted to have his hair as long as he wanted it and anywhere he wanted it. Generally, these witnesses for plaintiffs saw no relationship between the length of a male student's hair, however long it might be, and the standards and atmosphere of education at a high school.
A high school senior called as a witness by defendant testified that he and a "football friend" met one boy whose hair was too long, took him to the gymnasium, and cut his hair with a pair of scissors so that he had to get a short haircut. It developed that this boy was on a "three-day notice" to have his hair cut from the school's principal. Much feeling and many protests resulted from this, and the scissors wielders were punished and put on probation as to similar occurrences. In general, the two seniors testified that male students at Lexington Schools did not wear their hair in ultra-long fashion, that the feeling of the students generally was opposed to "long hair", and that such hair style was distracting and disturbing to those who came to school to study and learn.
David Martin, principal of Gilbert High School, testified to a student at his school calling another a "long haired (unmentionable)", with a first fight resulting, which he had to stop, and with subsequent excitement, disorder and hostile feelings.
The testimony was generally to the effect that male students in the District Number One High Schools did not, as *735 a rule, wear very long hair, that the decided majority were opposed to it, and that only a small minority wanted to violate the hair grooming regulation. It was generally stated that every pupil knew what the hair grooming regulation and "conventional standards" meant, since this was explained to the entire male student body each year, and repeated from time to time during the school year.
Mr. Yarborough, now principal of the high school at Summerville, testified at length as to the effect on discipline, good order and learning the absence of a dress code of appearance had, and compared the comparative good order in the Charleston Schools, where he was formerly located, when they had good grooming regulations, with the many recent disorders in those schools, when all such regulations had been abolished.
Both the principal and assistant principal at Lexington High School, as well as Mrs. McMahan, a classroom teacher there, and Mr. Rawl, now superintendent of the District, and formerly principal of the High School, stated unequivocally that hair that violated the regulations was distracting, tended to create disorders, attracted the attention of other students and caused whistles, jeers, laughs and remarks, and was detrimental to the educational environment. One stated that, without enforcement of the hair grooming regulation, he did not feel that there would be any proper discipline in the schools, and that education would suffer greatly.
Dr. Williams, who has been in public education for many years, stated that it is his opinion that anything unusual, abnormal, out-of-the-ordinary, or not customary, has a tendency to attract attention to it; and, consequently, any unusual appearance of a pupil at school which attracts the attention of other pupils to it will unquestionably result in distractions and diversion of attention which necessarily take the pupils' minds away from their purpose in attending school  to get an education. He was clearly of opinion that these hair regulations prescribed for male students were reasonable and served a useful purpose.
Plaintiffs seek a declaratory judgment in addition to an injunction and/or restraining order. After reviewing the credible testimony, together with the exhibits, and having studied proposed findings and conclusions as submitted by counsel, this court, in compliance with Rule 52, Federal Rules of Civil Procedure, publishes its

FINDINGS OF FACT
1. School District Number One of Lexington County, South Carolina, acting through its authorized and qualified educators  administrators promoted certain regulations as to dress and grooming, including male haircuts. These regulations were published in the student handbook and communicated each year to the entire student body.
2. The student regulation requires boys to be clean shaven and to "secure haircuts in keeping with conventional standards." Explanation by school officials fully implemented the handbook and plaintiffs, as well as other male students knew that the hair had to be above the eyes in front, off of the ears on the side, and above the collar in the back.
3. The dress regulations, and the implementations of them, were for the purpose of securing a proper climate for pursuit of educations in the schools of the district. They were and are a part of the discipline which the educators  administrators of the district sincerely believed necessary to keep the order requisite to teaching and learning. More than an "undefined fear or apprehension of disturbance" was established by the credible testimony. Administrators, students and others testified that extremes in hair styles have in the past created distractions and disturbances in the schools. They had reasonable basis on which to base their opinions and the resulting policies.
4. The minors involved did not wear long hair as an expression of belief on *736 any subject such as the Vietnam War, the draft, or other issues which have been the subject of Constitutional  First Amendment assemblies and protests. Their reasons for wearing long hair, as explained by each and both, was to use an apt expression "to do as I please." Nothing in this record reveals that the violation of the regulation could produce for either of them, or anyone else a furtherance, improvement, or complement to the educational processes to which the schools are, traditionally, dedicated and supported by tax dollars. In fact, there was no showing that a violation of the regulation could be beneficial to anyone connected with the entire school system; the contrary was clearly evidenced.
5. The record is void of any showing either minor plaintiff suffered any harm by obeying haircut regulations. As long as they obeyed the same regulations required of everyone else, they remained in school. Their suspension from school could at any time have been avoided or terminated by their having their hair cut.
6. The court finds that the plaintiffs were in violation of the regulations, when they were suspended from school. The regulation was sufficiently clear and concise and plaintiffs fully understood its meaning and purpose. They deliberately and intentionally allowed their hair to exceed acceptable limits in order to test the authority of the school administrators. Their action was deliberately improper and prompt discipline was justified. They knew the penalty and they knew how to avoid it. They chose instead to violate, and then test, rather than to test before violating.
7. The regulation and its implementation are neither vague nor too broad. There appears to be nothing arbitrary, unreasonable or capricious in the promulgation or implementation of the regulation. Its interpretation and enforcement have a real and reasonable connection with successful school operations, and the discipline which is a necessary part thereof. Defendants have established that the excessively long hair is disruptive of and a barrier to the learning processes which the schools seek to develop. The regulation, the implementation is/was necessary in the orderly operation of the school program.

AND CONCLUSIONS OF LAW

THE FEDERAL COURT AND THE STUDENT
The Fourth Circuit Court of Appeals stated in its opinion affirming the refusal of the preliminary injunction "we are reluctant to decide a constitutional question in a new context without a full record disclosing the facts." Not wishing to trespass in any manner upon the authority of, nor about the directions contained in, that opinion this court undertakes decision on the alleged constitutional questions involved. This is difficult in the light of the admonitions of Mr. Justice Black in Karr v. Schmidt, Principal of Coronado High School, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797, published February 11, 1971, by the Supreme Court of the United States:
I refuse to hold for myself that the federal courts have constitutional power to interfere in this way with the public school system operated by the States. And I furthermore refuse to predict that our Court will hold they have such power. It is true that we have held that this Court does have power under the Fourteenth Amendment to bar state public schools from discriminating against Negro students on account of their race but we did so by virtue of a direct, positive command in the Fourteenth Amendment, which, like the other Civil War Amendments, was primarily designed to outlaw racial discrimination by the States. There is no such direct, positive command about local school rules with reference to the length of hair state school students must have. And I cannot now predict this Court will hold that the more or less vague terms of either the Due Process or Equal Protection Clauses have robbed the *737 States of their traditionally recognized power to run their school system in accordance with their own best judgment as to the appropriate length of hair for students.
A search of the reported cases divulges a plethora of opinion on the subject of the power of school authorities. Among those which have sustained the power of the school authorities to prescribe similar disciplinary regulations are: Ferrell v. Dallas Independent School District (N.D.Tex.1966), 261 F.Supp. 545, aff. 392 F.2d 697 (C.A. 5, 1968), cert. den. 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed. 2d 125; Stevenson v. Wheeler County Board of Education (S.D.Ga.1969), 306 F.Supp. 97, aff. 426 F.2d 1154 (C.A. 5, 1970), cert. den. Dec. 14, 1970, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265; Wood v. Alamo Heights Independent School District (W.D.Tex.1970), 308 F.Supp. 551, aff. 433 F.2d 355 (C.A. 5, 1970); Jackson v. Dorrier (C.A. 6, 1970), 424 F.2d 213; Carter v. Hodges (W.D.Ark. 1970), 317 F.Supp. 89; Giangreco v. Center School District (W.D.Mo.1969), 313 F.Supp. 776; Brick v. Board of Education (D.C.Colo.1969), 305 F.Supp. 1316; Brownlee v. Bradley County, Tenn., Board of Education (E.D.Tenn. 1970), 311 F.Supp. 1360; Pritchard v. Spring Branch Independent School District (S.D.Tex.1970), 308 F.Supp. 570; Davis v. Firment (E.D.La.1967), 269 F. Supp. 524, aff. 408 F.2d 1085 (C.A. 5, 1969); Schwartz v. Galveston Independent School District (S.D.Tex.1970), 309 F.Supp. 1034; Southern v. Board of Trustees for Dallas Independent School District (N.D.Tex.1970), 318 F.Supp. 355; Leonard v. Attleboro, 349 Mass. 704, 212 N.E.2d 468, 14 A.L.R.3d 1192; Freeman v. Flake (N.D.Utah 1970), 320 F.Supp. 531; Neuhaus v. Torrey (N.D. Cal.1970), 310 F.Supp. 192; Mercer v. Lothamer (E.D.Ohio 1971), 321 F.Supp. 335; Lovelace v. Leechburg Area School District (W.D.Pa.1970), 310 F.Supp. 579; Jeffers v. Yuba City Unified School District (E.D.Cal.1970), 319 F.Supp. 369; Farrell v. Smith (S.D.Me.1970), 310 F.Supp. 732; Casey v. Henry (W.D. N.C.), opinion filed October 20, 1970); and Pound v. Holladay (D.C.Miss.1971), 322 F.Supp. 1000. Similar are Farrell v. Joel (CCA 2, 1971), 437 F.2d 160 and Anderson v. Laird (Army National Guard) (CCA 7, 1971), 437 F.2d 912.
On the other side of the coin are those cases which effectively deny the school authorities the right to prescribe and/or declare that such enforcements are unconstitutional deprivations: Breen v. Kahl (W.D.Wis.1969), 296 F.Supp. 702, cert. den., 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268; Richards v. Thurston (D. Mass.1969), 304 F.Supp. 449, aff. 424 F.2d 1281; Sims v. Colfax Community (S.D.Iowa 1970), 307 F.Supp. 485; Calbillo v. San Jacinto Junior College (S.D. Tex.1969), 305 F.Supp. 857; Zachry v. Brown (N.D.Ala.1967), 299 F.Supp. 1360; Griffin v. Tatum (N.D.Ala.1969), 300 F.Supp. 60; Westley v. Rossi (D. Minn.1969), 305 F.Supp. 706; Reichenberg v. Nelson (D.Neb.1970), 310 F. Supp. 248; Crews v. Cloncs (S.D. Ind.1970), 303 F.Supp. 1370, reversed 432 F.2d 1259 (7 Cir. 1970); Watson v. Thompson (E.D.Tex.1971), 321 F.Supp. 394; Dawson v. Hillsborough County, Florida School Board (M.D.Fla.1971), 322 F.Supp. 286; Martin v. Davison (W. D.Pa.1971), 322 F.Supp. 318; Lambert v. Marushi (S.D.W.Va.1971), 322 F. Supp. 326 and Turley v. Adel Community School (S.D.Iowa 1971), 322 F.Supp. 402.
The futility of catalouging or attempting to recite the holdings, reasonings or judicial philosophies in these cases would serve no useful purpose. The widespread confrontation of the adolescent pupil and the adult educator-administrator is all too evident. The issue is not whether a school student can wear long hair, short hair or shaved head, but whether the school authorities have the authority or the United States District Court must act as a school board. As was stated in Alberda v. Noell (E.D.Mich.1971), 322 F.Supp. 1379.
In filing these cases the plaintiffs have punched various constitutional and statutory buttons; the major keys being the 1st, 4th, 5th, 6th, 8th, 9th, *738 10th and 14th Amendments to the United States Constitution; the minor keys being 28 U.S.C. §§ 1343(3) and (4), 2201 and 2202, and 42 U.S.C. §§ 1975, 1981, and 1983. There is no indication in any of these cases that the plaintiffs, or any one of them, have sought relief from the courts of the State of Michigan, much less any claim that they have resorted to such courts and have been improperly denied relief.
It would appear from the number of "hair" cases in the federal reports that many federal courts have responded with a Pavlovian-type conditioned reflex, and considerable alacrity, in exercising jurisdiction of claims arising from dress and grooming codes or regulations. * * * It may be that this kind of case offers federal judges a pleasurable escape from the more usual, garden-variety federal cases  a welcome change of judicial diet, as it were. Whether this use of federal judicial man-hours in cases of this class is justified, necessary or required is really our basic question, as we see it (conceding that our vision is less than perfect).
It should be noted that these cases raise havoc with our calendars requiring as they do, interruptions of our regularly scheduled matters for the purpose of hearing applications for restraining orders and preliminary injunctions, in what are alleged, as they always are, emergency situations. Meanwhile, "back at the ranch" or at our ordinary chores, we are under the gun to expedite our disposition of criminal cases, school desegregation cases, old civil cases, multiple district cases, and the like. * * *
* * * * * *
We find here no right, considered especially important by the federal judiciary, threatened; we see no irreparable harm flowing from declining federal jurisdiction. In short, we find that the state's strong interest in the field of education outweighs whatever interest in the subject matter may be said to be federal. On balance then, it appears to us that the wise course for us to follow is to defer to the state, its school authorities and its courts. * * *
We must do more than wring our hands when we on the federal bench are imposed upon to entertain cases best left to the states. This court takes a step in that direction and holds that the above-entitled cases do not present substantial federal questions, and that this court should defer to the state and its courts. It is time that the public litigants and counsel be disabused of the notion, currently enjoying great favor, that a federal court is the only court in which federally guaranteed rights can or should be enforced. Roth, J.
As was stated by Chief Judge Lumbard (concurring) in Farrell v. Joel, supra:
However, it would seem appropriate to suggest to the district judges that perhaps one way of encouraging plaintiffs to seek their remedies in a state court, where they more properly belong and where, as in this case, it is conceded that they could have gone, would be to deny a temporary restraining order and refuse to give these matters any preference, to which they are clearly not entitled. That relief may be available in the state courts is enough reason to deny temporary relief in federal courts, since failure to do so could not cause irreparable harm if another forum is also available.
This court does not seek shelter from responsibility under the umbrella of abstention.

THE CLASS ACTION
Rule 23(a) Federal Rules of Civil Procedure, provides:
Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions *739 of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
From the evidence presented, it is unquestionably true that ultra long hair has caused disturbances, even fights, at the high schools in Lexington District Number One, and that there is a very positive potential for future disorders and commotions if the hair grooming regulation is eliminated. This court has determined that such long hair worn by male pupils in the schools of District Number One of Lexington County has a detrimental and injurious effect upon the educational atmosphere there. It may be that such hair in the schools of New York City, of Washington, D. C., of Los Angeles, of Berkeley, California, or of Madison, Wisconsin, would go unnoticed and have no effect, but such is not the case in Lexington School District Number One.
Preliminarily, plaintiffs seek to have this adjudicated as a class action, for reasons alleged in paragraph 7 of their supplemental and amended complaint. At the hearing of the issues herein, plaintiffs offered no testimony to support their allegation that this should be treated as a class action, and that the class is composed of so many individuals that intervention would be impractical. One pupil, David Rhoten, testified that he attended Lexington High School, and that Mr. Gladden, its principal, sent him home until he cut his hair, but he made no effort to be brought into this action as a party plaintiff, and no testimony was presented that others desired to join in this action. For reasons set out in Southern v. Board of Trustees for Dallas Independent School District (N.D.Tex. 1970), 318 F.Supp. 355, Elko v. McCarey (E.D.Pa.1970), 315 F.Supp. 886, and Reichenberg v. Nelson (D.Neb.1970), 310 F.Supp. 248, and the testimony presented to this court, this action does not come within the provisions of Rule 23, Federal Rules of Civil Procedure.
Professor Wright[9] summarizes the purpose and advantage of the class action:
It provides a means by which, where a large group of persons are interested in a matter, one or more may sue or be sued as representatives of the class without needing to join every member of the class.
There is an absence of showing that a class of similar hair stylings exist at the school, or if such exists, that the members are numerous.
This action cannot longer be maintained as a class action. This does not deny the adolescent plaintiffs either the forum or the decision here incorporated.

THE ALLEGED CONSTITUTIONAL QUESTIONS
While plaintiffs invoke the First, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendments to the United States Constitution in support of their allegations that this regulation is unconstitutional and void, a close study of the complaint indicates that the following are the real issues raised herein:
1. Is the regulation invalid by reason of the fact that it violates plaintiffs' rights of freedom of speech?
2. Is the regulation so vague and overbroad as to be invalid under the Fourteenth Amendment as abridging the privileges and immunities of citizens of the United States and denying plaintiffs the equal protection of the laws?
3. Does it violate plaintiffs' right of privacy?
4. Does it violate the Fourteenth Amendment by depriving plaintiffs of their substantive due process rights, denying them the equal protection of the laws, and denying them privileges and immunities due them as citizens of the United States and of the State of South Carolina?
*740 If this regulation is otherwise valid, certainly suspension (not expulsion) from school until the pupil cuts his hair so that it complies with the regulation does not constitute cruel and unusual punishment, and the court so holds.

THE FIRST AMENDMENT QUESTION
Does the regulation under attack deny plaintiffs that freedom of speech guaranteed by the First Amendment to the United States Constitution? Of necessity the court's attention is directed to Tinker[10] which directed that, "In the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views."[11] This court is not convened to interpret Tinker, rather to follow and apply; therefore, the language of the majority opinion [Mr. Justice Fortas] is here employed:
But conduct by the student in class or out of it, which for any reason  whether it stems from time, place, or type of behavior  materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech. 393 U.S. 503, 513, 89 S.Ct. 733, 740, citing Blackwell v. Issaquena County Board of Education (CCA 5 1966), 363 F.2d 749.
This court has discussed, supra, the failure of plaintiffs to pitch their case on expression of support of any idea or ideology. The case, therefore, does not involve rights akin to pure speech. Plaintiffs can find no constitutional shelter under the First Amendment. Again relying on the language of Tinker, supra:
The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. Cf. Ferrell v. Dallas Independent School District, 392 F.2d 697 (5 Cir. 1968); Pugsley v. Sellmeyer, 158 Ark. 247, 250 S.W. 538 (1923). It does not concern aggressive, disruptive action or even group demonstrations. Our problem involves direct, primary First Amendment rights akin to "pure speech."
Additionally, there is no suggestion here that the activities of plaintiffs were expressing such political or social thought as to entitle them to First Amendment protection. Close v. Lederle (CCA 1 1970), 424 F.2d 988, cert. den. 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140.
Plaintiffs are entitled to no relief under the First Amendment.

IS THE REGULATION SO VAGUE AND OVERBROAD AS TO BE INVALID UNDER THE FOURTEENTH AMENDMENT?
Plaintiffs attack the regulation pursuant to which the school's principal acted in requiring that their hair be cut on the ground that it is void for vagueness and overbreadth. The wording of the regulation is: "Students are expected to be clean and neat. This means that boys will be clean shaven and that they will secure haircuts in keeping with conventional standards." As pointed out above, the regulation as applied by the principal of plaintiffs' school meant that boys hair should be cut over the eyes, off the ears and off the collar. Several witnesses testified to varying definitions of the term "conventional" in abstract and in regard to hair cuts in particular. *741 Their testimony clearly reveals that the term is one which, in the words of the Cheshire Cat, "means what I say it means, My dear." However, there can be no doubt that the plaintiffs herein, together with others who may be a member of their class, knew exactly what was required of them in the matter of hair cuts if they were to remain in school. The "above the eyes, over the ears and off the collar" standard was explained to the student body and to those who chose not to conform with it individually by the administrators before anyone was sent home because of long hair. The practice appears to have been to allow a student whose hair was too long three days in which to have it cut. Only upon failure to get the hair cut within three days was the student suspended and then only until such time as he got it cut.
In its contention regarding vagueness plaintiffs rely upon the numerous cases involving the vagueness of criminal statutes. That reliance is not well placed. The regulation here involved is not a punitive one. Ill consequences do not flow from an unintended breach, only from persistence in failing to comply after being given notice to do so.
In Esteban v. Central Missouri State College, 415 F.2d 1077 (8th Cir. 1969) Judge Blackman stated:
Fourthly, we see little basically or constitutionally wrong with flexibility and reasonable breadth, rather than meticulous specificity, in college regulations relating to conduct. Certainly these regulations are not to be compared with the criminal statute. They are codes of general conduct which those qualified and experienced in the field have characterized not as punishment but as part of the educational process itself and as preferably to be expressed in general rather than in specific terms. (at 1088)
In that case the plaintiffs had been suspended from a college for participation in a campus disturbance. The reasoning of the court set forth above applies even more convincingly where the student, as here, is given the constant opportunity, even after commencement of the suspension, to cut his hair and avoid the sanction.
The due process prohibition against vagueness in criminal statutes is based upon a requirement of fair notice and warning to the would be offender. The record reveals that the regulation together with the mode in which it is enforced gives more than fair notice and warning to the students. It is therefore sufficiently definite and certain to meet constitutional requirements.
The regulation is also attacked for overbreadth. The prohibition against overbroad statutes and regulations has been expressed as follows:
Even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when that end can be more narrowly achieved. (Sheldon [Shelton] v. Tucker, 364 U.S. 479, 488 [81 S.Ct. 247, 5 L.Ed.2d 231] (1960)).
There can be no doubt that the defendant promulgated the regulation in question in attempting to perform an essential state function, the operation of the public schools. The court is by no means convinced that there are fundamental personal liberties or protected rights involved. It is argued that the regulation is manifestly overbroad but the argument is dropped there. If there is reasonable apprehension of disruption resulting from exceptionally long hair, which this record indicates is the case, the regulation is appropriate. It deals only with the problem at hand and would have minimal, if any, effect on plaintiffs' free exercise of any constitutional rights. It cannot therefore be considered overbroad.

THE RIGHT OF PRIVACY
Plaintiffs contend that their rights of privacy guaranteed by the First Amendment and the "penumbra" of rights existing around the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments *742 are also here involved. They quote:
The makers of our Constitution * * * conferred, as against the government, the right to be let alone  the most comprehensive of rights and the right most valued by civilized men. Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928). Brandeis, J. dissenting. Stanley v. Georgia, 394 U.S. 557, 89 S. Ct. 1243, 22 L.Ed.2d 542 (1969).
In Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), statutes prohibiting the use of contraceptives were held invalid as an unconstitutional invasion of the right of privacy. This fundamental right was not limited to marital affairs.
There seems little similarity between the marital privacy of a married couple in their bedroom and that of a pupil attending a public high school, and this court cannot see how the rule announced in Griswold, supra, can be expanded and extended into a right to appear in a public school as the pupil pleases.
That this view is held by other courts in other jurisdictions is attested by the decisions in Cordova v. Chonko and Richards v. Thurston, heretofore cited, in the first of which the court said:
As previously pointed out, the general rule is that children do not actually possess all of the liberties of the person accorded to adults by the Bill of Rights. Hence, as to the claim of First Amendment rights of free expression and Fourth Amendment right of privacy, it cannot be found that the defendant Chonko, in suspending the plaintiff, or the defendant Board of Education, its members and its Superintendent, in failing to correct or restrain Chonko from exceeding the powers granted to him, are chargeable with a violation of the Civil Rights Act, (315 F.Supp. 963);
and in the second of which the court said:
Nor do we see the logic of expanding the right of marital privacy identified in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), into a right to go public as one pleases. (424 F.2d 1283).
In footnote 5 at 424 F.2d 1283, commenting on the above citation, Circuit Judge Coffin, who wrote the court's opinion, said:
That "privacy" has not been generally understood in the latter sense is indicated by the definition of privacy given by Alan F. Westin in his wide-ranging book Privacy and Freedom, (1967), at p. 7: "Privacy is the claim of individuals, groups or institutions to determine for themselves when, how, and to what extent information about them is communicated to others."
In Felber v. Foote (D.C.Conn.1970), 321 F.Supp. 85, 88, the following language persuades:
Plaintiff further makes the unwarranted assumption that the special nature of the doctor-patient relationship affords him a constitutionally protected right to privacy in his conduct of the relationship. There is no "general constitutional right to privacy." Katz v. United States, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). See Travers v. Paton, 261 F.Supp. 110 (D. Conn.1966).
In Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) the so-called right of privacy granted protection was the right of husband and wife to be let alone in the determination of family planning aspects of their marital relationship. There is not the slightest indication in the Griswold opinion that by its protection of the sanctity of the family, the Court intended to constitutionalize the privacy of other relationships, specifically that of physician and patient. (Felber v. Foote, filed Dec. 21, 1970, 321 F.Supp. 88, 89).
To be noted also is the dissenting opinion of Justices Black and Stewart, in Griswold, supra, wherein they said:
What provision of the Constitution, then, does make this state law invalid? The Court says that it is the right *743 of privacy "created by several fundamental constitutional guarantees." With all deference, I can find no such general right of privacy in the Bill of Rights, in any other part of the Constitution, or in any case ever before decided by this Court. (381 U.S. 530, 85 S.Ct. 1706, 14 L.Ed.2d 542).
Griswold does not apply here, and the regulation does not unconstitutionally deprive plaintiffs of any right of privacy. Indeed it does not affect or expose or threaten to expose to the public or any part thereof the goings on in the homes of plaintiffs or their parents.

FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS
Plaintiffs complain of a lack of procedural due process. They position:
An additional reason for finding the regulation in question unconstitutional is that it fails to provide for a hearing or other impartial method of determining the issues in controversy. The regulation similarly fails to provide for written notice to parents or student. It offers no opportunity to the student to present evidence or to be proceeded against on the basis of substantial evidence. In short, the regulation provides the student-accused none of the rights of due process which are required in disciplinary proceedings.
The school regulations provide no specific manner of obtaining a hearing before the School Board or any administrative agent. In retrospect, what was there to have a hearing about, for plaintiffs admittedly and designedly violated regulations known to them. If a matter of policy was involved, the Board of Trustees could have been petitioned for a hearing on the policy. There is no question but they could have remained in school except for their violating the known regulation.
This is not a case in which the School Board, or its administrators acted arbitrarily.
On September 18, 1968 the United States District Court for the Western District of Missouri en banc published a General Order on Judicial Standards of Procedure and Substance in review of Student Discipline in Tax Supported Institutions of Higher Education.[12] Recognizing the nature of student discipline as compared to criminal law, the court reasoned:
A federal court should not intervene to reverse or enjoin disciplinary actions relevant to a lawful mission of an educational institution unless there appears one of the following:
(1) a deprival of due process, that is, of fundamental concepts of fair play;
(2) invidious discrimination, for example, on account of race or religion;
(3) denial of federal rights, constitutional or statutory, protected in the academic community; or
(4) clearly unreasonable, arbitrary or capricious action.
This court cannot, of course, adopt the principles there enunciated, but can find guidance therein. Such application in no way lessens the rule propounded in Dixon v. Alabama State Board (CCA 5 1961), 294 F.2d 150, 155, cert. den. 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193, that:
Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law.
On comparison, however, of Dixon and the case under consideration, the facts are so entirely different as to deny that Dixon would warrant relief to plaintiffs or censure of defendants in the manner in which a simple suspension was involved.
As pointed out by Professor Charles Alan Wright in the Oliver Wendell Holmes Lectures delivered at Vanderbilt University Law School,[13] "A vast literature has already sprung up on the subject *744 * * * and there remain many vexing questions" as to the application of the Fourteenth Amendment to student and campus affairs.
To shackle the Board of Trustees with a hearing on every trivial dispute would create choas. If facts are in dispute, and an arbitrary decision on those facts projects injury, the Fourteenth Amendment protects the victim. But where facts are undisputed, the whole question resolving to what policy the school board should be allowed to project, unless the student is definitely harmed, or his constitutional rights clearly denied, no formal hearing is required.
Finally, this court finds guidance in the dissenting opinion of Mr. Justice Harlan in Tinker:
I certainly agree that state public school authorities in the discharge of their responsibilities are not wholly exempt from the requirements of the Fourteenth Amendment respecting the freedoms of expression and association. At the same time I am reluctant to believe that there is any disagreement between the majority and myself on the proposition that school officials should be accorded the widest authority in maintaining discipline and good order in their institutions.
As was observed in Mailloux v. Kiley (CCA 1 1971), 436 F.2d 565:
The court in no way regrets its decision in Keefe v. Geanakos (CCA 1 1969), 418 F.2d 359, but it did not intend to do away with what, to use an old-fashioned term, are considered the proprieties, or to give carte blanche in the name of academic freedom to conduct which can reasonably be deemed both offensive and unnecessary to the accomplishment of education. Cf. Close v. Lederle (CCA 1 1970), 424 F.2d 988, cert. den. 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140.
The court finds no lack of due process in the events here before it.

CONCLUSION
The plaintiffs have presented to this court an insufficient showing to warrant relief in this forum.
The prayer for a restraining order and/or a permanent injunction is denied.
A declaratory judgment in favor of defendants is in accord with the findings and conclusions here published.
The Clerk will enter an order dismissing the action.
And it is so ordered.

APPENDIX A

NOTICE OF APPEAL
Pursuant to the Federal Rules of Civil Procedure, the undersigned as Attorneys for Petitioners herein do hereby appeal the Order of Honorable Robert W. Hemphill, herein dated January 11, 1971 to the Fourth Circuit Court of Appeals, Richmond, Virginia.
By direction of the Honorable J. Clement Haynsworth, Chief Judge of the said Court, this case will be expedited in order that it may be heard during the first week of the February 1971 term, and you will please take notice accordingly, that Judge Haynsworth has directed that the entire record, together with the briefs for the petitioners, be on file with the clerk in Richmond, Virginia, not later than the 20th of January, 1971 and the briefs of the respondents shall be forwarded no later than the 29th of January, 1971; that all briefs will be taken in ten (10) copies, without printing costs, from a Zerox type reproduction, including one from each of the parties to the others.
Since no evidence was taken upon the trial of the motion for the temporary or preliminary injunction the following are enclosed at the direction of Judge Haynsworth for inclusion in the record:
Exhibit A: A color Photo of Rumler and Nichols, left to right.
Exhibit B: A black and white 3 × 3½, the same.
Exhibit C: A photo approximately 5 × 8, Black and White, reading left to right, Nichols, Steele, Singletary, and Rumler.
Exhibit D: A joint affidavit by Nichols and Rumler  3 pages.
*745 Exhibit E: A two page affidavit by Carol C. Nichols.
Exhibit F: A two page affidavit by Barbara Louise Rumler.
Exhibit G: A two page affidavit by William Singletary with two photos attached.
Exhibit H: Affidavit by Raymond B. Steele, Jr.
Exhibit I: Affidavit of Dora Weaver.
Exhibit J: Affidavit of Jack McGuinn.
Exhibit K: Affidavit of Travis Ard.
Exhibit L: Affidavit of Kenneth Shuler.
Exhibit M: Three photographs in color showing side and back views of petitioners. It is represented to the court that this is the way the petitioners appeared at the time they were expelled from school.
Exhibit N: Affidavit of David Rhoten.
The rules of the School District alleged to void for vagueness are a part of the record which is to be forwarded.
In the meantime, the attorneys for the respondants have assured the Court that if the petitioners will obtain reasonable haircuts they will be given their final examinations and they will do all in their power to secure a proper period of time for review in order that petitioners may make up for the time lost and to prepare them for a fair chance to make a fair showing upon the final examinations.
 s/ _____________________
 Jack F. McGuinn
 Laughlin McDonald
 Attorneys for petitioners-appellants
ON THE BRIEF:
James A. Rebholz
1505 McArthur
Columbia, South Carolina
Mel Wulf
Joel Gora
156 Fifth Avenue
New York, New York
NOTES
[1] Student Handbook, Lexington County School District No. 1, July 1, 1968; introduced as plaintiff's exhibit No. 5.
[2] Of Lexington County, South Carolina.
[3] Section 21-230, South Carolina Code 1962, Annotated, provides:

General powers and duties of school trustees.  The board of trustees shall also:
(1) * * *
(2) * * *
(3) Promulgate rules and regulations. Promulgate rules prescribing scholastic standards of achievement and standards of conduct and behavior that must be met by all pupils as a condition to the right of such pupils to attend the public schools of such district. The rules shall take into account the necessity of proper conduct on the part of all pupils and the necessity for scholastic progress in order that the welfare of the greatest possible number of pupils shall be promoted notwithstanding that such rules may result in the ineligibility of pupils who fail to observe the required standards, and require the suspension or permanent dismissal of such pupils;
(4) * * *
Of interest is the following citation in the annotations to that code section:
Authority to discipline students. 
School superintendents have authority to makes rules and regulations concerning discipline in their schools, which authority is derived through delegation of the powers vested in the board of trustees and can require students to conform to conventional or normally accepted hair styles as a reasonable regulation of proper order and discipline in their schools, and can suspend students from school until they receive a normal hair cut. 1965-66 Ops. Att'y Gen. No. 2051, p. 134.
[4] In one action brought to this court's attention the plaintiffs were described as "17-year old infants."
[5] Counsel did not delineate their request for relief, nor catalogue whether a preliminary injunction (appealable if denied) or a temporary restraining order (not appealable if denied) was desired. The trial court did not attempt to label, but considered the motion as one for alternate relief. See Wright: Law of Federal Courts, 1970 Edition, § 102. Review of Interlocutory Orders  p. 459.
[6] The Notice of Appeal is attached to this order as an appendix (Appendix A) in order that reference may be had as to what matters were formerly presented before the appellate court.
[7] As to the authority of the appellate courts to hear appeals from injunctions despite their interlocutory nature see: Rosen v. Sugarman, 357 F.2d 794 (2nd Cir. 1966); Chappell & Co. v. Frankel, 367 F.2d 197 (2nd Cir. 1966); Carter v. Am. Tel. & Tel., 365 F.2d 486 (5th Cir. 1966); Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1st Cir. 1966); Dorfmann v. Boozer, 134 U.S.App.D.C. 272, 414 F.2d 1168 (1969).
[8] When this case was heard on the merits, both plaintiffs were in school and both wore their hair at such length that it violated the regulations; it appearing that plaintiffs had taken the position that the decision of the Court of Appeals provided in effect, that they did not have to cut their hair again until this court had rendered a final decision on the merits. This court does not so construe the decision of the Court of Appeals; but, at the time the case was heard, the school authorities had not made an issue of this question.
[9] Wright: Law of Federal Courts (1970) p. 306  § 72 Class Actions.
[10] Tinker v. Des Moines Independent Community School District (Feb. 24, 1969), 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, which held that the peaceful wearing of armbands in the school by students thus evidencing their protest against continuation of hostilities in Vietnam, being entirely divorced from actual or potentially disruptive conduct by those participating in it was closely akin to pure speech and entitled to comprehensive protection under the First Amendment, and the regulation prohibiting such wearing by the students violated the right of free speech under the First Amendment.
[11] 393 U.S. 503, 511, 89 S.Ct. 733, 739.
[12] 45 F.R.D. 133, 142-143.
[13] Vol. XXII Vanderbilt Law Review #5, 1027, 1033.